Virginia Marie HEERMANCE,
Appellant,

v.

James Noel HEERMANCE, Respondent.

No. WD 36695.

Missouri Court of Appeals,
Western District.

March 4, 1986.

Gwendolyn S. Froeschner, Columbia, for appellant.

Patrick J. Eng, Columbia, for respondent.

Before LOWENSTEIN, P.J., and TURNAGE and BERREY, JJ.

BERREY, Judge.

Virginia Heermance, respondent below and appellant herein, appeals from a trial court decision to award custody of two minor children to James Noel Heermance, respondent (hereinafter referred to as Noel). This court affirms.

Noel was chairman of the English Department at Lincoln University in Jefferson City, Missouri, for four and one-half years starting in 1970. Virginia was Noel's student. At the time of Virginia's involvement with Noel, she was still married to Thomas Paige who, for religious reasons, was also known as Aasim Inshirah. Virginia and Inshirah had two children, Aasim, Jr. and Zainab. Noel was married to Mary Carol Heermance.

While maintaining these relationships, Virginia gave birth to Atief Fathee Paige on August 26, 1976. Thereafter Noel and Virginia began living together with Atief, Aasim, Jr. and Zainab. Following their respective divorces they married each other on July 27, 1977, and on September 17, 1977, Virginia gave birth to a daughter, April Noelle Heermance.

While Noel and Virginia lived in wedlock, Noel taught at Lincoln University, worked on a prison project and worked part-time as a security guard and as a dishwasher. He supported his wife and children as well as Virginia's sisters Dee Dee, and Penny who had two children. Dee Dee lived with them for at least three years, and Penny and her children lived with them for about six months. Virginia testified she eventually took employment with the Woodhaven Learning Center as a child-care worker.

On Sundays, Virginia took Aasim, Jr. and Zainab to the mosque and met with Insirah. Respondent testified he would not let her take April and Atief because there was an arrangement "that there would be no Islam in the marriage." Noel testified he spent all his free time with Atief and April. He stated he also spent time alone with Atief before April was born.

In the summer of 1980, Virginia went to visit her mother in Washington, D.C. At this time Noel's mother was ill and Noel, April and Atief went to see her. During this period Virginia had established a relationship with her ex-husband Inshirah. Noel wrote to Virginia and told her to come home because of her renewed interest in Inshirah. Virginia did return but lived in her sister's trailer with Aasim, Jr. and Zainab while April and Atief lived with Noel. Virginia did spend several hours each day with April and Atief.

In March 1982, Virginia again planned to visit Washington D.C. and Noel, Atief and April went to Arizona to visit Noel's mother. He and Virginia had agreed that the children would call her once a week at a certain time. The calls were made but not answered by Virginia; they were answered by her sister Penny or brother Darrell.

Virginia then called Noel asking him to bring April and Atief to Washington, D.C.

He was financially unable to do this and Virginia told him she would get the money for him. Subsequently, he called over the course of several weeks and she was not available. Finally, Noel reached Virginia and she advised him that she had no funds for him and that he was not to call anymore. He then filed for dissolution of marriage and Virginia was served with process in Washington, D.C.

In August 1982, Virginia returned to Columbia and moved in with Inshirah, Aasim, Jr. and Zainab. Noel enrolled April and Atief in New Haven school. In November 1982, Virginia removed the children from New Haven and entered them in West Boulevard school. Virginia then filed a motion for temporary custody pendente lite. The court granted temporary custody to Virginia.

From November 1982, to December 1984, Virginia had continuous custody of April and Atief. During this interval the paternity of Atief was being litigated. Inshirah intervened in the dissolution as the presumptive father of Atief. It was eventually determined by the court that Noel was the legal father of Atief.

Atief informed Noel that he was being mistreated. Atief's reading was at an advanced level and when he entered first grade he was assigned second grade material. There was evidence, however, that his skills in math and spelling had deteriorated during this seventeen-month hiatus. April read and did her numbers by the age of four. Following the seventeen month interval April transposed numbers, and wrote both numbers and letters backwards. She developed ringworm which was not arrested until Noel and April were on a three week trip. She also suffered from an infestation of head lice. Atief had "eight major cavities." Six were of such extent that they had to be capped. Noel testified that both children claimed Virginia's son, Aasim, Jr. assaults them.

Throughout the course of the paternity litigation, it was difficult for Noel to enjoy visitation with April and Atief. Virginia did not permit Atief to attend the wedding of his half-brother, Noel's son.

At the conclusion of the hearing, the court entered its order dividing the marital property, assessing maintenance and awarding attorney fees; these items are not contested herein. The court granted custody of Atief and April to Noel and allowed Virginia the following visitation: (1) summer vacation from one week after school ends in the spring to one week before school begins in the fall; (2) one week during Christmas vacation; and (3) one week during spring vacation.

■ For Point I appellant alleges that the trial court erred in granting custody to Noel because such award was against the weight of the evidence. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), has firmly established the law in this area. Appellate courts affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Therefore, this court may set aside the trial court's judgment only with the firm belief that the decree or judgment is wrong. *Id.*

■ This court must give the trial court deference for its opportunity to judge the credibility of the witnesses. *Johnson v. Mercantile Trust Company National Association*, 510 S.W.2d 33, 38 (Mo.1974); Rule 73.01(3)(b). Since neither party requested findings of fact and conclusions of law, the court must find the fact issues to be in accordance with the result. *DePaul Hospital v. Southwestern Bell Telephone Company*, 539 S.W.2d 542, 545 (Mo.App. 1976). Both parties were engaged in illicit relationships, despite their virtuous claims. The trial court's duty is to inquire into all facets of the parties' claims. The desires of the parents must be subordinate to the children's welfare. *In the Interest of K.K.M.*, 647 S.W.2d 886, 889 (Mo.App.1983). Each case involving child custody must turn on the peculiar facts of that case with the ultimate decision being in the best interest of the child. *C.A.Z v. D.J.Z.*, 647 S.W. 895, 896 (Mo.App.1983).

■ The trial court's finding regarding child custody is controlling unless the reviewing court is convinced the welfare of the child requires a different disposition. The lower court's decision regarding the custody of children is granted greater deference than in other cases. *Fastnacht v. Fastnacht*, 616 S.W.2d 98, 100 (Mo.App. 1981).

■ From the evidence presented the trial court could have found both parents were engaged in illicit affairs. The court could also have reasonably found that the children's physical, emotional and mental development was best nurtured under the father's care and tutelage. Respondent's Point I is denied.

■ For her second point respondent alleges trial court error in separating the children of Virginia and Noel from their half-brother and sister for nine months of the year. April and Atief had always lived together as sister and brother. They have not had such a continuous relationship with Aasim, Jr. or Zainab.

■ The appellant cites *In re Marriage of Mihalovich*, 659 S.W.2d 798 (Mo.App. 1983), as supportive of her position. It is not. In *Mihalovich*, the trial court separated siblings ages 12, 10 and 2. The court therein makes no reference to half-brothers and sisters. Citing *Ray v. Ray*, 535 S.W.2d 267, 268 (Mo.App.1976), the *Mihalovich* court acknowledges the caveat that "absent exceptional circumstances the children of divorced parents should not be separated." *Mihalovich, supra,* at 801. The children of this marriage were not separated. Appellant has not given us any authority regarding her specific allegation that half-siblings should not be separated. Of course, the trial court had no jurisdiction to enter any order relating to the custody of Aasim, Jr. and Zainab.

The trial court in *Cochenour v. Cochenour*, 642 S.W.2d 402, 404 (Mo.App.1982), had divided siblings, two girls to their mother and two boys to their father. Each party challenged the decree and contended they should have custody of all of the children. On appeal the trial court judgment was sustained; the appellate court citing *Murphy v. Carron, supra; Ray v. Ray, supra.* The court noted the trial court has the power to order separation of siblings if it is in accordance with their best interest. *Roberts v. Roberts*, 668 S.W.2d 249, 251 (Mo.App.1984). Point II is denied.

Appellant by Point III again alleges, albeit obliquely, those points covered in Point I and Point II which this court has addressed.

■ For her final Point appellant alleges trial court error in granting her only three months visitation during the summer. The trial court specifically set the terms of visitation as previously noted. The appellant is to have visitation with April and Atief from one week after school is out in the spring until one week before school begins in the fall, one week at Christmas and one week during spring vacation.

The appellant cites *In re Marriage of Powers*, 527 S.W.2d 949, 953 (Mo.App. 1975), as being controlling. The court held, "The allocation of custody time between the two parents, both of whom appear to be fit and proper persons, seems to be both a reasonable compromise and, most critically, in furtherance of the child's best interests." This is the recognized standard and granting Noel custody is not contradictory of this standard.

Appellant failed to understand the decree, for in her brief she alleges that petitioner cannot "even see them at Christmas or exchange presents with them at anytime other than in the summer." As we have previously noted such is not the case.

It has been suggested that April and Atief have been denied telephone contact with their mother during their school term stay with Noel. Nothing reflects this in the record.[1] Point IV is denied.

Judgment affirmed.

All concur.

---

1. Based on the record herein, it is certainly in the best interest of April and Atief if they are

encouraged to telephone and converse with the absent parent at reasonable intervals.