In re MARRIAGE OF WELCH.

**Debra Alane WELCH,
Petitioner–Respondent,**

v.

**Leroy Bruce WELCH,
Respondent–Appellant.**

No. 16718.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 18, 1990.

Max H. Glover, Glover & Miller, Webb City, for respondent-appellant.

No brief filed for petitioner-respondent.

SHRUM, Judge.

A decree of dissolution of the parties' marriage was entered September 19, 1989. Leroy Bruce Welch (Husband herein) ap-

peals from that decree, presenting one point relied on. He contends that the trial court erred in its determination of marital indebtedness when the husband was ordered to assume a $22,000 liability to the wife's father. Husband contends the indebtedness was not marital because: (a) it was not incurred during marriage; (b) it was not a joint obligation of the parties; and (c) it was not a debt assumed by the husband.

The parties were initially divorced May 28, 1987. In the first decree, the wife was awarded the marital real estate at 1021 Poplar Street, Carthage, Missouri. At that time, there was a mortgage lien against the property. Soon after the May 28, 1987, divorce and before August 5, 1987, wife's father, Bob Lyttle, paid off the mortgage on 1021 Poplar Street. The record is less than clear as to exactly what was done.

Q. [To wife] ... Who had the loan on the house [1021 Poplar]? Who was responsible for paying the loan on the house?

A. Bob Lytle [sic].

Q. Was Bruce [husband] aware of that to your knowledge at the time that the deed was signed over to him?

A. Yes, he was.

\* \* \* \* \* \*

Q. [To wife] ... Now, you indicated that you made payments on 1021 Poplar up until October; is that correct?

A. That's correct.

Q. And where did you make those payments?

A. Southwest Missouri Bank.

Q. Was that on an obligation which you and Bruce owed to the bank on the property?

A. ... The payments that were made, that was made on a loan on that piece of property that was in my dad's name.

Q. All right. So that loan was not in your name or Bruce's name?

A. No.

Q. It was a loan that your father took out?

A. On 1021 Poplar.

\* \* \* \* \* \*

Q. Well, as a matter of fact, there was no mortgage taken out on 1021 was there, Mrs. Welch?

A. No. There was a promissory agreement.

Q. All right. Did Mr. Welch ever pay you anything on 1021?

A. Yes. There was one month when he helped me make that payment.

The parties remarried August 17, 1987. During the period between the initial divorce and the remarriage, husband and wife remained in constant contact. By the wife's recollection,[1] she deeded the 1021 Poplar Street property to husband by deed dated August 5, 1987.[2] Her version was that in the months preceding the August 17, 1987, marriage, she and husband talked daily about transfer of the 1021 Poplar Street real estate to the husband; she finally deeded the property to husband in anticipation of their marriage. The wife's testimony was that the conveyance of 1021 Poplar Street to husband was a condition of becoming married.

Q. [To wife] ... And what did Bruce say to you? [conveyance as condition of being married.]

A. That in order for the marriage to take place, that that property would have to have his name on the title. That that would be a way of showing trust. That he was to be the head of

---

1. The record contains widely disparate testimony concerning the 1021 Poplar Street property, the reason for wife conveying the same to husband in August 1987, and the $22,000.00 debt which is the subject of this appeal. When the husband's Motion for Amendment of Findings or in the Alternative For New Trial was overruled, the trial court said: "[T]he decision that I made was deliberate. There was no mistake.... The decision that I made and the decree that you have in your hand is precisely

what I intended to do.... I can tell you ... the credibility of both parties were [sic] so questionable that it was a difficult decision to make."

2. Wife insisted the deed was signed August 13, 1987 (four days before remarriage), but the instrument itself showed the deed to have been signed and acknowledged August 5, 1987, and recorded August 13, 1987.

the household and that he would in turn take care of the loan on that house. And that no one would ever find out that that had been done because both of our names then, in turn, would be put on that piece of property.

\* \* \* \* \* \*

Q. ... When you signed over 1021 Poplar to him, what was the reason you did it?

A. The reason that I signed the deed over to LeRoy was on the promise of marriage. Also, it was also on the promise that he then, in turn, would go to Southwest Missouri Bank and would have my father's name taken off of the loan and that he would have his name put on that loan and that he would assume the responsibility for that piece of property....

Q. ... Were any of them [sic] statements made to you that conditioned the transfer of property upon marriage?

A. Yes. If I did not deed the property to him, there would be no marriage.

The husband's version of why 1021 Poplar Street was deeded to him differs from wife's version. He testified the wife came to him and asked that he come up with the money which her father had paid on the existing loan; "She came to me and wanted me to produce monies to give to daddy." Husband said he gave wife $1,300 in cash before the deed was signed and before the second marriage. He accounted for the $1,300, in part, as coming from a roofing job. He had no recollection of the source of the balance of the $1,300 cash. Husband said he also gave the wife $17,651 in cash which came from a coin collection. He sold the coin collection on a Friday night to a coin collector from Kansas City, whose name the husband did not know. According to the husband, this sale took place at a house on Biers Street in Joplin, which the coin collector had rented. The $17,651 was in $100 bills which were put in a paper sack and hidden. Husband told wife that until she signed 1021 Poplar Street over into his name, he wasn't going to produce the money. According to the husband, the wife signed 1021 Poplar Street over to him, and he then gave her the $17,651; she, in turn, "supposedly gave them [the monies] to her father." After the deed was made and recorded, husband and wife remarried on August 17, 1987. Husband said that he gave wife an additional $1,450 six weeks after they married. The wife's version was that there was one month her husband helped her make a payment on the obligation owed her father, but that was the only payment he ever made on the debt.

In the debt oriented society now prevailing, the term "marital debts" is found in nearly every dissolution case filed. The term is found in the pleadings, separation agreements, court orders and judgments, and in the appellate court decisions. Yet, the term "marital debt" never appears in the "Dissolution of Marriage Act," § 452.300, et seq., and certainly is never defined. It appears to be settled that debts of the spouses are not marital property, *Johnston v. Johnston*, 778 S.W.2d 674, 677 (Mo.App.1989); *Harper v. Harper*, 764 S.W.2d 480, 483 (Mo.App.1989), and a trial court is not obligated to distribute debts and does not commit error when it fails to do so. *Feinstein v. Feinstein*, 778 S.W.2d 253, 259 (Mo.App.1989); *Newman v. Newman*, 717 S.W.2d 568, 570 (Mo.App.1986). Yet, allocation of marital debts is frequently said to be a commendable practice which serves to eliminate future dissention between the parties. *Brisco v. Brisco*, 713 S.W.2d 586, 592 (Mo.App.1986). The authority for allocating marital debts is derived, indirectly, from § 452.330 wherein the court is directed to "set apart to each spouse his nonmarital property and shall divide the marital property in such proportions as the court deems just...." From the statutory mandate that courts divide marital property, they have repeatedly held that the existence, extent and allocation of "marital debts" are factors to be considered by the trial court in establishing a fair division of marital property, *Johnston v. Johnston, supra,* at 677; *Fornachon v. Fornachon*, 748 S.W.2d 705, 709 (Mo.App. 1988), but few, if any, cases specifically define "marital debt."

■ Since "marital debt" is used as an aid in establishing a fair division of marital property, a description of marital property is helpful. "Marital property" is "all property acquired by *either spouse subsequent to the marriage....*" (With exceptions not here pertinent.) Section 452.330.2 (emphasis added). It follows, therefore, that "marital debt" is ordinarily "debt incurred subsequent to the marriage." Indeed, such language is frequently found when allocation of "marital debts" is discussed.

> The determination of who will be responsible for *debts incurred during the marriage* is a factor the trial court is to consider in seeking a fair division of marital property.

*Levis v. Levis*, 713 S.W.2d 561, 565 (Mo. App.1986) (emphasis added). *See also Russo v. Russo*, 760 S.W.2d 621, 624 (Mo.App. 1988), and *Golleher v. Golleher*, 697 S.W.2d 547, 549 (Mo.App.1985), in which the phrase "debts incurred by the parties during the marriage" is used synonymously with the term "marital debts."

■ Peculiar factual situations have, on occasion, resulted in an expanded definition of "marital property" and "marital debt." In *F.W.H. v. R.J.H.*, 666 S.W.2d 910 (Mo. App.1984), the husband and wife bought real estate on August 6, 1980. They were single when they bought the property. Title to the real estate was taken in the husband's name and the wife's maiden name as single persons. The parties married July 11, 1981. They were divorced by decree entered February 10, 1983. The trial court found the real estate to be marital property, awarded it to the husband and ordered him to pay the note and hold the wife harmless. An award of $1,000 was made to the wife as her share of the real estate. Upon appeal, the wife contended the trial court erred in finding that the house was marital property and disposing of it in a dissolution proceeding. On appeal, the trial court's action was affirmed:

> There was sufficient substantial evidence in this case from which the trial court could find that *the parties intended the house to be marital property.* There was testimony that *the property was purchased in contemplation of marriage and was intended to be used as the marital home.* (Citation omitted.)

> Having found that the house was marital property the court was required to make an equitable division of the property. This the court did in accordance with the evident purpose of the statute by terminating, without recourse to further litigation, all unity of possession as well as unity of title between the spouses. (Citations omitted.)

*F.W.H. v. R.J.H.*, *supra*, at 912 (emphasis added). Thus, in *F.W.H. v. R.J.H.*, *supra*, property bought before marriage, but purchased in contemplation of marriage, was deemed to be marital property. Even though the debt incurred in *F.W.H. v. R.J.H.*, *supra*, was incurred before marriage, the trial court's order directed the husband to pay the "pre-marital debt" as an incident of the fair division of property that was "marital" property because it was purchased in contemplation of marriage. It is true that in *F.W.H. v. R.J.H.* no claim was made to the appellate court that the debt was "nonmarital"; hence, the debt should not have been allocated. However, if "marital property" can include real estate purchased before marriage (but in contemplation of marriage) with the intent that it be the marital home, then "marital debt" may include a debt assumed when real estate is conveyed to a party before marriage (but in contemplation of marriage).

■ Here, the wife testified repeatedly, and at length, that she conveyed the property to husband before their marriage on August 5, 1987, "in order for the marriage to take place," in anticipation of marriage. The 1021 Poplar Street property had been the marital home before the first divorce, and she and the children continued to live in the home after the first divorce. The wife also testified at length that the husband agreed that if the property was conveyed to him, "he would in turn take care of the loan on that house"; he "would go to Southwest Missouri Bank and would have my father's name taken off of the loan and that he would have his name put on that loan and that he would assume the

responsibility for that piece of property." Husband strongly denied assuming the obligation to wife's father, yet clearly acknowledged the existence of the obligation when he testified he gave the wife more than $20,000 in cash to be used to pay her father. The trial court obviously disbelieved the husband's claim that he gave his wife cash to be used to pay her father. In accordance with Rule 73.01(c)(2), this court gives due regard to the opportunity of the trial court to have judged the credibility of the witnesses. There is sufficient substantial evidence to support the trial court's determination that the debt owed to wife's father was a "marital debt."

■ Support is also found for affirming the trial court's judgment in *Bashore v. Bashore,* 685 S.W.2d 579 (Mo.App.1985). In that case, the parties had established a joint bank account before their marriage. At the time, the parties contemplated marriage although no date for marriage had been set. The husband drew a check on the account to purchase a building lot and title was taken in his name alone. Husband then procured an FHA loan and had a residence built on the lot. On the final mortgage loan documents, both parties obligated themselves for repayment but wife's name was never added to the title. The trial court found the property to be nonmarital. The trial court's judgment was reversed on appeal. The appellate court relied on *Hoffmann v. Hoffmann,* 676 S.W.2d 817 (Mo. banc 1984), to determine that the property, although acquired before marriage, was marital property, stating:

> Under this rule ["the source of funds" rule as mandated by *Hoffmann*], the character of the property is determined according to the source of the funds

which finance the purchase. Thus all property on which marital funds are expended is marital property regardless of the date of acquisition and status of title. . . .

In the present case, applying the controlling authority of *Hoffmann, supra,* the family residence is marital property and must be divided between the parties based on the four factors set out in § 452.330.1, RSMo.Supp.1983. This follows because appellant's funds contributed to acquisition of the asset. . . . The fact that respondent's name alone appears on the record title is irrelevant. *Bashore, supra,* at 583. Following the controlling authority of *Hoffmann, supra,* and following *Bashore, supra,* this court finds that when the 1021 Poplar Street real estate was conveyed by the wife to the husband in contemplation of marriage, the wife was the "source of funds" or the "source of the property." Accordingly, the 1021 Poplar Street real estate was marital property [3] contributed by the wife. As said in *Bashore, supra,* the fact that title was held in the husband's name alone is irrelevant. If the property was marital, there was no error in determining that the debt owed the wife's father was marital and was assumed by the husband.

■ Husband argues that the obligation to wife's father was not a "joint obligation" of husband and wife and, therefore, the trial court erred in ordering the husband to assume the debt. Such argument ignores the language of § 452.330.3 which provides that "All property acquired by *either* spouse subsequent to the marriage . . . is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of coownership. . . ." Likewise, "marital property" is

---

**3.** Characterization of the 1021 Poplar Street real estate as marital property does not mandate reversal and retrial. The second marriage was of short duration; clearly the real estate was owned by wife and was nonmarital prior to the August 1987, conveyance to husband. Therefore, the property was contributed by her. Laying aside the husband's claim of having paid over $20,000 to the wife in cash (a claim which the trial court obviously disbelieved), the record shows the husband only helped in making one

payment on the obligation to wife's father. No improvements or unusual change in the value of the real estate is shown to have occurred during the short second marriage. Since the property is in the husband's name and he has been directed to pay the debt, no useful purpose would be served by reversing and remanding for a retrial on the property division alone. In contrast is *Hylton v. Hylton,* 716 S.W.2d 850 (Mo.App.1986); *Bashore v. Bashore, supra.*

described as "all property acquired by *either* spouse subsequent to the marriage...." Section 452.330.2. Clearly, the status of the title is not determinative of the character of property as marital or nonmarital. Since it is a commendable practice to consider the existence of the debt and who has responsibility for paying the same in making a fair division of marital property, *Johnston v. Johnston, supra,* at 677, there is no logical reason for confining the term "marital debts" to mean only those incurred jointly. Husband argues that since there was no evidence that he participated in borrowing the money or in the promise to repay it, he should not have been ordered to repay it. However, the fact that husband did not "control or actively participate" in the decision to make the debt does not preclude allocation of the debt to husband where, as here, it is determined to be a marital debt. *See, e.g., Schneider v. Schneider,* 761 S.W.2d 760 (Mo.App.1988), where the husband was ordered to pay the wife's student loan for which she was solely responsible (the wife had incurred the debt during the marriage; hence, it was a marital debt). The fact that husband was not a joint maker of the debt does not mean the trial court committed prejudicial error in allocating the debt to him when it divided marital property.

■ Finally, husband claims that it was not a debt assumed by him; hence, it was error to order him to pay the debt to wife's father. However, obligations incurred before marriage but assumed after marriage have been held to be marital debts. In *Hilton v. Hilton,* 676 S.W.2d 918, 919 (Mo. App.1984), the wife claimed error by the trial court in ordering her to pay a $17,000 bank note originally made by husband before marriage. The trial court's order was affirmed because "this note was secured by wife's collateral, and was later co-signed by her. So, the note was her joint debt." *Hilton, supra,* at 919. Husband attempts to distinguish *Hilton* from the facts in his case by pointing out that here, he did not secure the wife's obligation to her father after their marriage nor did he sign any note or other instrument promising to pay the wife's father. However, a written

agreement agreeing to assume a debt is not necessary. In *Hylton v. Hylton,* 716 S.W.2d 850, the wife had conveyed real estate which she owned before marriage (which was subject to two debts) to her husband in exchange for her husband paying a delinquent note payment. The trial court had set aside the deed as having been procured by husband by duress. That judgment was reversed on appeal, with the court saying:

> The law is clear that a spouse may by agreement, either express or implied, transmute an item of once separate property into marital property. (Citations omitted.) Here, wife made an express agreement with husband that in exchange for husband's help with the note payment, wife would transfer an interest in the property to husband. Husband made the payment and wife executed a new deed. The real estate was transmuted into marital property and should have been treated as such by the trial court.

*Hylton,* at 852. The same may be said in the case at bar. There is substantial evidence from which the trial court could find that the wife made an express agreement with the husband that in exchange for the husband's help in paying the obligation owed her father and in anticipation of marriage, she conveyed her nonmarital property to the husband. The husband acknowledged: (a) receipt of a deed for the real estate free of lien; and (b) a debt owed by wife to her father in that he claimed to have given her substantial cash with which she could pay her father, Bob Lyttle. Husband's claim of cash payment to the wife in exchange for the deed strongly corroborates the wife's testimony that husband was to assume and pay the debt. Husband's evidence failed to convince the trial court that he had paid the debt assumed. Given the facts shown by this record, the trial court did not err in ordering husband to pay the debt to wife's father.

It is true that the trial court found the 1021 Poplar Street property to be "nonmarital." That is inconsistent with a determination that the debt owed to wife's father

Bob Lyttle was a "marital debt." The only point asserted on appeal to be error is the determination that the debt owed to wife's father was marital and the order directing husband to pay. Having found that there was sufficient substantial evidence to support the judgment of the trial court, this court affirms the judgment as required by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). However, in doing so, we feel compelled to correct the trial court's judgment so as to properly characterize the 1021 Poplar Street property as "marital property," rather than nonmarital, but award such marital property to the husband. Authority for making such correction is derived from Rule 84.14 which provides that "[t]he appellate court shall ... give such judgment as the court ought to give. Unless justice otherwise requires, the court shall dispose finally of the case."

The trial court's judgment is ordered modified as set forth above, and as modified, the judgment is affirmed.

PARRISH, P.J., and HOGAN, J., concur.