In re the MARRIAGE OF Brian
D. DIETERLE and Laurie
S. Dieterle.

Brian D. DIETERLE, Petitioner–
Respondent,

v.

Laurie S. DIETERLE, Respondent–
Appellant.

No. 21464.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 6, 1998.

James K. Justus, Justus & McCullah, Forsyth, for Appellant.

Gary W. Allman, Cantwell, Allman, Smith & Trokey, LLP, Branson, for Respondent.

GARRISON, Presiding Judge.

Laurie Dieterle ("Wife") appeals from a decree dissolving her marriage to Brian Dieterle ("Husband"). She complains that the trial court erred in valuing Husband's medical practice, and in granting sole custody of the parties' minor child ("Daughter") to Husband. We affirm in part, and reverse in part.

Husband and Wife met in St. Louis in October 1989, and married on March 30, 1990. At that time, Husband, a physician, was in training as a resident; Wife was a student. Wife had two young sons from a prior marriage, who lived with her and Husband; Husband had two grown daughters and a son from previous marriages. On April 15, 1991, Daughter was born. Husband completed his residency in 1992, and the family moved to Branson, Missouri, where Husband assumed the medical practice of another physician.

The couple had agreed that Husband would practice medicine full-time and that Wife would remain at home with the children. This arrangement continued until the parties separated on January 27, 1995, the date Husband filed his petition for dissolution. On December 27, 1996, the trial court dissolved the marriage, awarded sole custody of Daughter to Husband, granted Wife visitation rights, divided the couple's property and debts, and awarded Wife temporary maintenance.

This court will affirm a dissolution decree unless no substantial evidence supports it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 (Mo. banc 1989); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). We are mindful that the trial court has a superior opportunity to assess the credibility of witnesses, and we recognize that it is free to believe all, part, or none of the testimony of any witness. *T.B.G.*, 772 S.W.2d at 654. When determining the sufficiency of the evidence, we accept as true all evidence and inferences therefrom that are favorable to the trial court's decree, and disregard all contrary evidence. *Id.* We will reverse a decree as "against the weight of the evidence" only if we are firmly convinced that it is wrong. *Id.*

Wife raises two points on appeal, the first of which relates to the trial court's valuation of Husband's medical practice. She contends that the trial court erroneously concluded that Husband's medical practice had no equity, because "it failed to take into account the accounts receivable, patient charts, and goodwill of the practice ... and included three debts which were not practice-related."

The evidence indicated that Husband paid the doctor whose practice he "assumed" $7,400 for equipment, and that he later paid approximately $5,000 for a computer. Husband's opinion was that the equipment used in his practice was worth approximately 50 percent of those amounts. Husband testified that he had accounts receivable of $85,000, which are only partially collectible, and that he had 3,500 patient charts. Apparently anticipating evidence to be presented by Wife, Husband called the chief financial officer of Skaggs Hospital in Branson, who testified that Skaggs had purchased three or four medical practices, but had paid only for the fixed assets. He testified that the hospital had not purchased or paid for accounts receivable or patient charts.

Wife called an expert who testified that accounts receivable and patient charts, as well as goodwill, are part of the value of a medical practice. He valued Husband's medical practice at $70,000, which included amounts for all of those components.

The trial court adopted neither value, and instead found that "certain debts exist and that [Husband's] practice would not have existed were it not for said debts." These debts were to Student Loan Corporation in the amount of $47,787, to Husband's parents in the amount of $54,000, and to Skaggs Hospital in the amount of $16,000, for a total of $117,787. The trial court then held that the practice had no equity, presumably because these debts exceeded even the highest value placed on the practice by the evidence.

■ It is well-settled that debts are not marital property, and that trial courts are not obliged to allocate them between the parties in a dissolution. *Reisenleiter v. Reisenleiter*, 926 S.W.2d 914, 917 (Mo.App. E.D. 1996). Trial courts are, however, required to consider marital debts in establishing a fair division of marital property. *Id.* Marital debts are debts incurred subsequent to or in contemplation of marriage. *In re Marriage of Welch*, 795 S.W.2d 640, 643 (Mo.App. S.D. 1990). While the existence of marital debts affects the overall net value of the marital estate, a marital debt does not alter the value of a specific marital asset unless it is secured by a lien or other encumbrance on that asset.

*Oldfield v. Oldfield*, 666 S.W.2d 17, 19 (Mo. App. E.D.1984).

■ In the instant case, Husband testified that he incurred the debts to his parents and to Student Loan Corporation to finance his medical education, which he completed in 1988, one year before he met Wife. These debts, apparently not incurred subsequent to or in contemplation of the marriage, are not marital debts *Welch*, 795 S.W.2d at 643. The Skaggs Hospital debt was incurred to pay the family's living expenses when they first moved to Branson in 1992, and apparently was marital in nature. Nowhere does the record indicate, however, that any of these three debts encumbers Husband's medical practice, or any individual component thereof. Nor does either party claim that monies from these loans were used to acquire equipment, supplies, or other assets for the practice.

■ The trial court erred when it utilized these three debts in determining the value of Husband's medical practice. *Oldfield*, 666 S.W.2d at 19. While the debt to Skaggs Hospital is apparently marital in nature and could be considered in the overall evaluation, as well as distribution, of the marital estate, *Welch*, 795 S.W.2d at 642, the other two debts are not. If valued without being diminished by those debts, Husband's practice may be a significant part of the marital estate. Reconsideration of the value of the practice, and consideration of the Skaggs debt as marital in nature, may, in the trial court's discretion, affect the division of the marital estate. Accordingly, we reverse the portion of the trial court's decree valuing Husband's medical practice and dividing the marital property, and remand this case for further proceedings consistent with this opinion.

In this regard, Wife also contends that the trial court erroneously failed to consider the accounts receivable, patient charts, and goodwill as a part of the value of Husband's practice. The conclusion that these matters were excluded in the valuation is not determinable from the judgment. In concluding that the medical practice had no equity, and therefore no value for division purposes, the

trial court considered the debts referred to above, the total of which exceed even the highest of the valuation opinions. One of those opinions included consideration of the items which Wife now argues were ignored by the court. The trial court's methodology, however, made it unnecessary for it to determine whether those items should be considered in valuing the practice. On remand, attention is directed to cases such as *Theilen v. Theilen*, 847 S.W.2d 116, 120 (Mo.App. W.D.1992), which instructs trial courts to consider the value of tangible assets, accounts receivable, and monetary assets in determining the value of a professional practice, as well as *Hanson v. Hanson*, 738 S.W.2d 429, 434–436 (Mo.banc 1987), which discusses the necessary evidentiary support required to consider goodwill as an ingredient in value. *See also In Re Marriage Of Hershewe*, 931 S.W.2d 198, 203–204 (Mo.App. S.D.1996).

In her second point, Wife complains that the trial court erred in granting sole custody of Daughter to Husband. She argues that the weight of the evidence supports an award of joint legal custody, and of primary physical custody to her. She also contends that Daughter should not be separated from Wife's other children, who are Daughter's half brothers, because no exceptional circumstances exist to justify a separation.

■ When making a child custody determination, the trial court must consider all relevant factors and fashion an award that is in the best interests of the child. § 452.375.2, RSMo 1994. This court reviews a child custody award with an awareness that the trial court has broad discretion to decide what is in the child's best interests, and we treat its determination with great deference. *In re Marriage of Patroske*, 888 S.W.2d 374, 383 (Mo.App. S.D.1994). We presume that the trial court's award is consistent with the child's best interests, and we will not interfere with the trial court's disposition unless the child's welfare compels us to do so. *Replogle v. Replogle*, 903 S.W.2d 551, 554 (Mo. App.W.D.1995). We may not substitute our judgment for that of the trial court so long as credible evidence supports the trial court's award. *Patroske*, 888 S.W.2d at 384.

■ The record contains considerable evidence of the parties' virtues and faults. Husband's evidence characterized Wife as an indifferent, neglectful wife and mother. He testified that she was inattentive to the children's personal needs, and that she hired housekeepers and nannies rather than tend to them herself. He also stated that she would order catered food instead of cooking meals herself, and would purchase new clothing for the children instead of laundering soiled clothing. During the year before the parties separated, Husband testified, Wife became ever more inattentive, preferring to go out frequently and spend time smoking marijuana with her friends.

A neighbor testified that she observed Wife's older children playing outdoors during winter unsupervised and inadequately dressed for the weather, and that Wife's sons and another child, again unsupervised, had fallen through the ice on a frozen lake. Another neighbor testified that she frequently saw Daughter and Wife's other children playing in the street unattended. One of the family's former nannies, who worked for them shortly before Husband and Wife separated, stated that she had to do "pretty much everything" for the children, because Wife was often out with friends.

The nanny also testified that she discovered marijuana plants growing in the basement of the family home. Husband testified that they belonged to Wife, and that he had no access to them. Wife admitted that she had cultivated the plants, and stated that Husband had given her the seeds to start them. She testified that she had smoked marijuana on a regular basis before she and Husband separated, but had not used the drug since then. Husband admitted that he, too, had smoked marijuana while the couple was married, but said that he had stopped in the summer of 1994.

Husband also testified about other changes he had made in his lifestyle to accommodate Daughter's needs since he and Wife separated. He stated that he altered his work schedule so that he could spend more time with Daughter, and described the "day care" room, outfitted with a desk, bed, TV, and

VCR, which he has established for her at his office. When she is with him, he takes her on his rounds at the hospital and at nursing homes, and in particular takes her to see terminally ill patients, who find her presence "very uplifting." According to Husband, she enjoys this activity, and "does very well" at it. Family friends testified that he and Daughter have a good relationship.

Wife observes that she was Daughter's primary caretaker before she and Husband separated, and that she, her three sons, and Daughter lived together as a family unit up until the time of trial. During the marriage, she testified, Husband had no problem with her practice of purchasing catered food for the family, because he had on several occasions refused to eat the food she cooked. She also denied allowing the children to play unsupervised, or leaving them alone unattended. She called herself a "very nurturing mother;" several other witnesses characterized her as a loving, attentive, parent.

Wife asserts that no substantial evidence supports the trial court's award of sole custody of Daughter to Husband. We disagree. Although she presented several witnesses who attested to her skills as a parent and her status as Daughter's primary custodian during the marriage, the trial court was free to disbelieve these witnesses. *T.B.G.,* 772 S.W.2d at 654. It was likewise free to accept Husband's portrayal of himself as the only stable influence in Daughter's life, and of Wife as an indifferent, inattentive wife and mother. *Id.*

■ Citing the family's prior living arrangement, in which Daughter lived in the same household with her half brothers, Wife argues that no exceptional circumstances exist to justify separating Daughter from them. In support of this proposition, she cites *In re Marriage of Newberry,* 745 S.W.2d 796, 797 (Mo.App. S.D.1988); *Morgan v. Morgan,* 701 S.W.2d 177, 182 (Mo.App. S.D.1985); and *C.A.Z. v. D.J.Z.,* 647 S.W.2d 895, 896 (Mo. App. S.D.1983). In each of these cases, this court discussed separating full siblings born of the marriages subject to the appeals. Wife cites no authority for her suggestion that exceptional circumstances must exist to warrant the separation of *half* siblings. *See*

*Heermance v. Heermance,* 706 S.W.2d 548, 551 (Mo.App. W.D.1986). The trial court has the power to order separation of even full siblings if it is in accordance with their best interest. *Id.* Wife has not persuaded us that her concerns about separating Daughter from her half brothers are anything more than one of many relevant factors the trial court had to consider in determining Daughter's custody. She has also failed to convince us that the trial court abused its discretion in granting sole custody of Daughter to Husband. *Patroske,* 888 S.W.2d at 384. Her second point is denied.

The judgment of the trial court is reversed with respect to the division of the marital property. On remand, the trial court shall determine the value of Husband's medical practice in accordance with this opinion, and may, if necessary, reallocate the marital property and marital debts to achieve an equitable distribution. In all other respects, the judgment is affirmed.

PREWITT and CROW, JJ., concur.