**James Lynn HUGHES, Petitioner–Respondent,**

v.

**Beulah P. HUGHES, a/k/a Julie P. Hughes, Respondent–Appellant.**

**No. 22610.**

Missouri Court of Appeals, Southern District, Division Two.

June 29, 1999.

---

3. At oral argument, Appellant abandoned and withdrew a third point.

Larry G. Luna, Branson, for appellant.

Eric A. Farris, Branson, for respondent.

KENNETH W. SHRUM, Presiding Judge.

In this dissolution of marriage case, Beulah P. Hughes (Wife) appeals from that part of the trial court's judgment that divided marital property. She argues that a trial court error in classifying and valuating certain real property resulted a division of property that inequitably favored James Lynn Hughes (Husband). We disagree. We affirm the trial court's judgment.

Husband and Wife were married on August 2, 1990. They separated on November 6, 1997. No children were born of the

marriage. During the marriage, Husband worked in the oil fields in Louisiana until illness forced him to quit. Wife's employment history included sales work and employment at Branson hotels. When the parties moved to Missouri, Husband attempted retail sales work and hotel work. These jobs did not last long, however, due to his illness.

The marital asset in question is a Taney County home that cost $84,126. The deed to this property, dated October 15, 1996, lists Husband and Wife as owners of a one-half interest in the property and Husband's parents, Billy Joe Hughes and Mary Margaret Hughes, as owners of the other half. The parties agreed at trial that $87,900 was its fair market value. Other evidence regarding this transaction is conflicting.

Husband testified as follows. Upon moving to Branson, he needed a permanent place to live. His parents, who had a history of helping their children financially, agreed to pay for half interest in a home. According to Husband, "They would fund their half and I would fund my half." When asked how he was to pay his share, Husband answered, "My profit sharing . . . from Schlumberger Well Service."[1] This referred to Husband's retirement benefit with that firm—valued at $41,124 in October 1996—which was put into an IRA mutual fund when he quit work. However, Husband abandoned his plan to use his IRA account to pay for the house after he learned that the net proceeds from the account—i.e., after taxes and fees—would not cover his half of the cost of buying the house. Husband testified that he and Wife paid $6,000 on the Taney County property as their contribution toward their one-half of the purchase price. As to the remainder of the contribution, Husband's parents agreed to lend him enough money to pay for his part of the house. The loan agreement was oral. The parties did not prepare a note or any other writing. According to Husband, the loan was not interest bearing. As to repayment, Husband testified that there "was no specific date" when he had to repay the loan.

"Q. [TO HUSBAND] [W]as there any deadline as to when you were to pay that back or . . . what were the terms of this payback?"

"A. The terms were that—the agreement was to let the account grow to where it was enough to pay the penalty and give him his money."

As to Wife's involvement in this loan agreement, Husband testified that "[s]he was in the room when we talked about it." "She never had any input into it." Continuing, he explained, "I think she was aware, but she just wasn't paying much attention to what the dealings were." At trial, Husband insisted that he still owed his parents $36,000 for his one-half interest in the subject property.

Mary Hughes' (Husband's mother's) testimony included the following:

"Q. [TO MARY HUGHES] . . . [Y]ou've just heard us stipulate that you and your husband paid for the house, minus $6,000.00 to $10,000.00?"

"A. (Nods head.)"

"Q. Have you ever been paid back any portion for that house?"

"A. No."

"Q. . . . Were there discussion as to how you're to be paid back?"

"A. Before the house was built, yes."

"Q. What were those discussions?"

"A. [Husband] thought when he received his money on the share plan from Schlumberger that he would cash it in and it would be used for the house."

"Q. Was that to pay back their half—"

"A. —Yeah, their half."

"Q. Was that ever done?"

"A. No."

"Q. . . . Do they still owe you a balance of approximately $36,000.00?"

1. The record reveals that Schlumberger Well Service was Husband's former employer.

"A. They do."

Regarding repayment, Mary Hughes testified "[t]here's an agreement between [Husband] and myself and my husband that if we have really bad illness and the money is needed to pay the bills, he would cash in that IRA."

Wife put into evidence a check for $9,126, which she said was the contribution of Husband and her to the purchase of their half of the house. She acknowledged that Husband's parents paid the balance of Husband's and her share of the house, but said it was "just another gift" to them. According to Wife, the notion that she was to pay Husband's parents for this house "was never brought up" to her until after the dissolution case was filed. She recalled that initially Husband's parents said they were going "to build this home, but that it was going to be only [Husband's] house and ... [Wife] wasn't going to come into it." After Wife told Husband she would not move to Missouri under those conditions, Husband "talked to his parents ... and they decided to put [Wife's] name on the house." Also, Husband told Wife that his parents would "eventually ... give us more and more part of this home to where it would be completely ours ... one day."

In its judgment, the trial court found that "the parties have paid $9,126.00 of the price of the [Taney County] home and ... [Husband] *either owes his parents one-half of the balance of the cost of the home or his parents made a gift of one half the home to him*." (Emphasis added.) The court then divided marital property as follows:

## HUSBAND'S MARITAL PROPERTY

"A. The parties' interest in Taney County home ($9,545.80); and

"B. The IRA account (35,734.63)[2]; and

"C. The Benefit Capital Life Insurance ($3,290.20)[.]"[3]

## WIFE'S MARITAL PROPERTY

"A. The Dodge Intrepid; and

"B. Her share of the tangible personal property; and

"C. Any bank accounts in her sole name; and

"D. All her personal clothing and personal effects."

The judgment also provides, "[I]n order to equally and fairly divide the marital property the Court orders [Husband] to pay [Wife] the sum of $20,284.00." As to the marital debts, the judgment provides that Husband shall "pay the debts to his parents and ... his brother," and Wife shall "pay the debt against the Dodge Intrepid."

Wife's first point states:

"The trial court erred in valuing the marital interest in the [Taney County] home at $9,545.80, resulting in an inequitable distribution of the marital property, because there was no substantial evidence to find that one-half the cost of the home was gifted separately to [Husband] by his parents in that: ... the marital interest was jointly titled in [Husband] and [Wife]; and ... neither [Husband] nor his parents testified the parents' contribution was a separate gift to [Husband]."

We agree with Wife that the court's finding that Husband's parents gave him one-half of the house is not supported by substantial evidence. A gift to

---

2. At the time of trial, Husband's IRA account had a value of $52,782.72. The court awarded $3,151.29 thereof to Husband as non-marital property. It then found that the IRA account balance of $49,631.43 had a "present fair market value" of $35,734.63 after taxes at a 28% rate.

3. The court awarded additional marital property to Husband in paragraphs D–G of the decree. This property consisted of personal property items, clothing, personal effects, one item of furniture, and any bank accounts in his sole name. The court did not assign a value to these items of personal property.

both spouses is presumed to be marital property. *Burk v. Burk*, 936 S.W.2d 144, 146[4] (Mo.App.1996). The proof required to defeat this presumption must be so clear that no reasonable doubt can be entertained of its truth, and the evidence must be so cogent and compelling as to exclude reasonable doubt from the trial court's mind. *Id.* at 146[5]. This record contains no such proof. The evidence is simply not sufficient to rebut the presumption of transmutation by gift. The trial court's implicit finding to the contrary is erroneous. Consequently, the trial court erred by not classifying a full one-half interest in the Taney County real estate as marital property.

We further note that even if the trial court is correct in its alternative finding that Husband's parents loaned him money to buy the house—a question we address later—there is no evidence that it was a secured debt. A marital debt does not alter the value of a specific marital asset unless it is secured by a lien or other encumbrance on that asset. *In re Marriage of Dieterle*, 960 S.W.2d 556, 558[3] (Mo.App.1998). Consequently, the trial court also erred in not assigning the correct value to the marital real estate, i.e., $43,950.

However, the findings above do not end our analysis. It is well settled that "the mere erroneous declaration of what is or is not marital property, where the decree is nonetheless fair, will not require a reversal." *In re Marriage of Garrett*, 654 S.W.2d 313, 316[1] (Mo.App. 1983). *See also Spidle v. Spidle*, 853 S.W.2d 311, 316[4] (Mo.App.1993); *Stephens v. Stephens*, 842 S.W.2d 909, 915[5] (Mo.App.1992). Appellate courts do not reverse any judgment unless they find that the error committed by the trial court against the appellant materially affected the merits of the action. *Spidle*, 853 S.W.2d at 316; *In re the Marriage of Jennings*, 910 S.W.2d 760, 765[7] (Mo.App. 1995); Rule 84.13(b).

Here, the trial judge made the alternative finding that Husband "*owes his parents one-half of the balance of the cost of the home.*" He also ordered Husband to pay all marital debts owed to his parents. Although marital debts are not marital property and a trial court is not obliged to allocate them between the parties in a dissolution, a trial court must consider marital debts in establishing a fair division of marital property. *Dieterle*, 960 S.W.2d at 558[1]; *In re Marriage of Welch*, 795 S.W.2d 640, 642 (Mo.App.1990). The phrase "marital debts" encompasses all debts incurred during the marriage, either jointly or separately. *Welch*, 795 S.W.2d at 645. The fact that a spouse does not control or participate in the decision to make a particular debt does not preclude allocation of that debt to the non-participating spouse. *Id.* at 645[5].

In her second point relied on, Wife contends that the property division was inequitable because "there was no substantial evidence to support the trial court's finding that one-half the cost of the home was a loan to [Husband] in that there was no mutuality of agreement between [Husband] and his parents regarding repayment." Wife correctly points out that an essential element of an enforceable contract is mutuality of agreement. *Abrams v. Four Seasons Lakesites/Chase*, 925 S.W.2d 932, 937[6] (Mo.App.1996). Mutuality of agreement presupposes mutuality of assent by the parties to proposed terms for a contract. *American Nat'l Ins. Co. v. Noble Communications Co., Inc.*, 936 S.W.2d 124, 132[9] (Mo.App.1996).

With these principles in mind, Wife points to Husband's testimony that he was to pay the loan when his IRA account accumulated enough funds to pay for his half of the house, whereas his mother testified the loan was payable only if she and her husband needed the money in the future to pay medical bills. Wife says that this evidence conclusively establishes there was no mutual assent by Husband and his parents regarding an essential term of the

loan agreement, i.e., repayment. Consequently, she argues the trial court committed reversible error when it found the existence of a loan. We disagree.

■ Fatal to Wife's argument is Missouri case law holding that the failure of an oral loan agreement to specify a time for repayment does not render such agreement too indefinite to be enforceable as a matter of law. *Woods v. Hobson*, 980 S.W.2d 614, 617[4] (Mo.App.1998). *See Tom Davis Ins. Agency, Inc. v. Shivley*, 799 S.W.2d 195, 197 (Mo.App.1990). *See also Boatmen's Bank of Mid–Missouri v. Crossroads W. Shopping Ctr., Ltd.*, 907 S.W.2d 800, 803 (Mo.App.1995); *Gegg v. Kiefer*, 655 S.W.2d 834, 838 (Mo.App.1983). Relying on *Woods* and *Shivley*, we hold that the loan agreement did not fail for indefiniteness. Consequently, the trial court did not err when it ordered Husband to pay an approximate $32,937–$36,000 indebtedness to his parents.[4]

■ As noted earlier, case law requires a trial judge to consider debts in establishing a fair division of marital property. *See Dieterle*, 960 S.W.2d at 558[1]; *Welch*, 795 S.W.2d at 642. We presume the trial judge followed the law and considered the marital debt when he made this division of property, especially since there is no evidence to the contrary. *See Potts v. Velasco*, 926 S.W.2d 931, 933[2] (Mo.App.1996). Awarding Husband all of the parties' marital interest in the home, valued at $43,950, while also ordering him to pay a marital debt to his parents of some $32,937–$36,000, results in an equal division. Under the circumstances, Wife cannot show that the trial court's error in valuating the home was prejudicial or materially affected the merits of the action. *See Spidle*, 853 S.W.2d at 316; *Jennings*, 910 S.W.2d at 765[7]; Rule 84.13(b). Accordingly, we deny Points I and II.

As this court has authority to render "such judgment as the court ought to give," Rule 84.14, we exercise our discretion and classify as marital property the parties' one-half interest in the Taney County real estate. *Burk*, 936 S.W.2d at 146[6]; *Welch*, 795 S.W.2d at 646.

Judgment is entered classifying as marital property Husband and Wife's one-half interest in "all of Lot 27 Spring Meadows Third Addition as per the recorded plat thereof, recorded in D–364–365, Taney County Recorder[']s Office. Subject to easements and restrictions of record, if any," in Taney County, Missouri. Judgment is also entered awarding all of the parties' marital interest in said Taney County property to Husband.

The judgment of the trial court, as modified, is affirmed.

GARRISON, C.J., BARNEY, J., concur.

---

4. In its judgment the trial court did not quantify the debt amount, a potential problem about which no one complained on appeal. Husband and his mother testified the debt was $36,000. Other evidence suggests a different figure, i.e., $84,126 house cost divided by two, less $9,126 Husband and Wife contribution = $32,937 debt. Possible interest on the indebtedness is not part of the latter calculation.