Randall G. THARP and Bonnie L. Tharp, Appellants,

v.

MUFFLERS OF KANSAS CITY, INC. and Jack Wiser, Respondents.

No. WD 49624.

Missouri Court of Appeals, Western District.

Oct. 24, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 5, 1995.

Application to Transfer Denied Jan. 23, 1996.

Henry L. Graf, Kansas City, for appellants.

Joseph Colantuono, Kansas City, for respondents.

Before LAURA DENVIR STITH, P.J., and LOWENSTEIN and SPINDEN, JJ.

LOWENSTEIN, Judge.

This appeal is from a suit to collect on a $50,000 note representing part payment by the defendant-maker for the purchase of the plaintiffs' business. The note was in default; the defense to non-payment was fraud in the inducement. A jury found against the plaintiffs-payees. There was no verdict on set-off since the jury merely held for the defendants, the maker plus the guarantor of the note, on the payee's suit to enforce payment.

In May, 1985, the Tharps (husband Randall and wife Bonnie) sold their brake and alignment business (National Brake & Alignment, Inc.) to KC Muffler Supply, Inc. (Supply), a subsidiary of the defendant respondent Mufflers of Kansas City, Inc. (Mufflers). Among other consideration was a $100,000 promissory note of Mufflers in favor of the Tharps, guaranteed by defendant/respondent Jack Wiser, a corporate officer of both the defendant Mufflers and of Supply. The May 1985 note was payable in two $50,000 installments due on May 1, 1986 and May 1, 1987. Then, at the plaintiffs' insistence, in March 1986, Mufflers paid $50,000 on the note, and "in exchange for the one hundred thousand dollar note," "executed a new promissory note" for $50,000. Wiser also guaranteed this note.

When the $50,000 note became due August 1, 1986, the defendant-maker was in default. The Tharps sued Mufflers on the note and Wiser on the guaranty. Mufflers' answer contained an affirmative defense that the note it had executed was prompted by fraud on the part of the Tharps.

A jury found for Mufflers on the Tharps' claim for the amount due on the note ($50,000), and for Wiser on the claim for the guaranty.

As can best be understood, the Tharps raise the questions of: a) submissibility of the defendant's defenses to their suit on the note; and b) instructional error on the affir-

mative converse of fraud submitted on behalf of Mufflers. The facts will now be set out in more detail.

Defendant Mufflers agreed to the following terms in order to acquire National Brake and Alignment, Inc. from the Tharps: a) assume a $143,000 note at Central Bank in Kansas City; b) pay $100,000 cash to Bonnie and Randall Tharp; c) issue a promissory note in the amount of $100,000 with Bonnie and Randall Tharp as payees, and defendant Mufflers (*not* Supply) as the payor. In addition, Jack Wiser (president of Mufflers and Supply) signed a guaranty on the promissory note.

Contemporaneously with the May 1985 sale of the business, Randall Tharp signed an employment agreement with Mufflers to manage their new brake shop for about $40,000 per year. Mr. Tharp's duties were provided in the employment agreement as follows:

> [Mr. Tharp] agrees to faithfully perform the duties assigned to him to the best of his ability, to devote his whole and undivided time to the transactions of the employer's [Mufflers] business, not to engage, or be engaged, or be interested in any other business during the existence of this agreement.

On March 19, 1986, nearly one year after Tharp's sale of their business, Randall Tharp resigned from his employment with Mufflers. At this time Randall Tharp also requested an accelerated payment on the original promissory note for $100,000. Tharp requested that Mufflers pay $50,000 cash then, and sign a new promissory note for $50,000 in satisfaction of the 1985 note and guaranty. Tharp also requested that Wiser again sign a personal guaranty for the new $50,000 note. Wiser, acting both individually and as president of Mufflers and Supply, agreed.

In April 1986, about a month after Tharp's resignation, Wiser discovered an inventory shortage in excess of $81,000 in the shop purchased from Tharp. This loss had occurred during the May 1985 through March 1986, the period of Tharp's employment. An expert witness, a C.P.A., confirmed a total inventory shortage of $81,347. An employee at the shop where Mr. Tharp was manager testified that he saw Tharp leave the store on several occasions with a pickup truck full of parts taken from the store. The witness did not know where Tharp took these parts. In June 1986, Tharp opened his own car repair shop stocked with the same kind of parts sold at the Mufflers shop.

The same employee also testified that one day Mr. Tharp told him that Tharp had taken some money from the cash drawer and that Mr. Tharp offered him some "hush money." The defense also produced evidence that Mr. Tharp and his son had worked on Sundays when the shop was supposed to be closed. Customers came to the shop after Tharp's departure asking for adjustments on work done on their automobiles for which Mufflers had no record of any such work done for these particular customers.

At the trial, Randall Tharp admitted that he had taken parts from the store; however, he testified that he was merely taking these parts to other stores to replenish inventory. Tharp also admitted at trial that he pocketed cash from customers on more than one occasion. In addition, Tharp admitted to taking approximately $600 from the cash drawer at the store; however, Tharp testified that he utilized this money to pay for his son's medical bills, which he was told would be paid for by the company's insurance policy.

In March 1986, when Tharp requested the accelerated $50,000 payment and the signing of the new promissory note and guaranty, he did not disclose to Wiser the inventory loss, the cash diversion, or the off-hours use of the facility. Wiser testified at trial that had he known these facts he would not have agreed to the accelerated payment or signed the new promissory note and guaranty.

Again, to put the subject of this appeal in perspective, the Tharps sued on the 1986 note of $50,000. The defense was fraud in the inducement of making this note. The jury was never asked to consider defendant Mufflers' counterclaim for inventory and cash losses. The jury held against the Tharps on collection of the note, so no question of setoff is involved in the Tharp's appeal.

## I.

The first of the Tharp's points is based on insufficient evidence to support Muffler's jury submission of fraud in the inducement. Numerous subpoints have here been simplified and consolidated, and will be presented after reciting the standard of review.

The standard of review is set out in the following language, with citations omitted, from *Southwestern Bell Yellow Pages v. Robbins*, 865 S.W.2d 361, 365—66 (Mo.App.1993):

> In determining whether the trial court should have directed a verdict [for the moving party] or granted a judgment notwithstanding the verdict, this court must view the evidence in the light most favorable to [the adverse party] giving it the benefit of all reasonable inferences, and ignoring [the moving party's] contrary evidence except to the extent it aids [the adverse party]. Withdrawing a case from the jury is a drastic measure which should not be taken unless there is no room for reasonable minds to differ on the issues, in the exercise of a fair and impartial judgment. A jury's verdict must not be set aside unless there is a complete absence of probative facts to support the jury's verdict.

### A.

■ The Tharps argue defendant Mufflers has no standing to raise the defense of fraud in the inducement. They argue that all of the defense evidence at trial went to show that there was an inventory shortage at a non-party's business, Supply, and not at its parent, the defendant Mufflers; therefore, Randall Tharp did not divert any inventory from defendant Mufflers, which lacks standing to use the defense of fraud in the inducement.

"Standing requires that a party have a personal stake arising from a threatened or actual injury." *State ex rel. Williams v. Mauer*, 722 S.W.2d 296 (Mo. banc 1986). It was defendant Mufflers (the parent company) that signed the promissory note in question and paid the Tharps the purchase money for the assets and inventory received by its subsidiary, Supply.

David Hayes, a C.P.A., testified for the defense at trial that, although Supply and defendant Mufflers were indeed separate corporations, they are linked in a parent/subsidiary relationship. Hayes further testified that the loss of inventory by Supply (the subsidiary) directly affected and created a corresponding loss for defendant Mufflers (the parent company) from a tax, accounting, and overall economic reality viewpoint.

The uncontroverted evidence at trial showed that the shortage of inventory suffered by Supply had a direct negative effect on defendant Mufflers. Mufflers had a stake in the loss of inventory and, therefore, had standing.

### B.

■ The next point asserts that defendant Muffler's defense of fraud in the inducement should not be valid against the other plaintiff, Bonnie Tharp. Plaintiffs argue there was no evidence Bonnie Tharp was involved in any conversion or that she was involved in any fraud or fraudulent misrepresentations. Furthermore, the Tharps argue the only evidence introduced at trial as to Bonnie Tharp was that she was a 50% owner of the seller, National Brake and Alignment, Inc., that she was never employed by defendant Mufflers, and that she was merely the wife of Randall Tharp and not responsible for any of his conduct.

Plaintiffs cite the case of *Link v. Cox*, 529 S.W.2d 189 (Mo.App.1975) for the proposition that in the absence of agency a wife cannot be held liable for her husband's fraudulent acts. In *Link*, a pair of husbands and wives were being sued for actual and punitive damages for the fraudulent misrepresentations of the husbands, of which neither wife had any knowledge or participation in. The court stated that the agency of the husband for the wife cannot be established merely by their marriage, but may be shown by circumstantial evidence. *Link*, at 191. Having found no evidence of agency the court reversed the judgment against the wives (since without an agency relationship the wives were not liable to the plaintiff for their husband's fraud).

*Link* is distinguishable from the case at hand. In both cases, the wife did not partici-

pate in or have knowledge of her husband's fraudulent misrepresentations. In *Link,* the wife was a defendant being sued for actual and punitive damages for fraud claiming she had no knowledge or participation; whereas in the case at hand, the wife is a plaintiff who has sued a defendant asserting she had no benefit from her husband's actions.

The defense presented evidence at trial that Bonnie Tharp benefitted from Randall Tharp's diversion of $600 from the cash drawer at KC Muffler Supply since the Tharps used this money to pay for their child's medical expenses. There were also inferences that the inventory and money diverted from Supply became part of the marital estate of Bonnie and Randall Tharp. She admitted receiving the $50,000 payment. Thus, while in *Link* the wife was avoiding payment of damages for her husband's fraudulent actions, in this case, the wife has already benefitted from her husband's fraudulent actions and now is attempting to sue Mufflers and collect on the promissory note as well.

Plaintiffs also cite cases such as *Reason v. Payne,* 793 S.W.2d 471 (Mo.App.1990), for the general proposition that a spouse is not automatically liable as a defendant for the other spouse's torts. But, from the evidence and inferences here, she was aware of his taking of money and starting up a new muffler business, ratified his acts, and certainly reaped the benefits of Randall's actions; therefore she must assume full responsibility. *Holtmeier v. Dayani,* 862 S.W.2d 391, 403 (Mo.App.1993); *Bowen v. Loyd,* 589 S.W.2d 312, 317 (Mo.App.1979).

In any event, there is the "principle that an innocent third party is not entitled to keep property wrongfully procured for him by another...." *White v. Mulvania,* 575 S.W.2d 184, 190 (Mo. banc 1979). In following this general principle while ruling on the issue of whether Bonnie Tharp (even though personally free of any guilt) should be allowed to recover from the allegedly defrauded defendants, the trial court succinctly stated in ruling on after-trial motions, "[i]f this court is compelled to place the loss upon one of two equally innocent parties, plaintiff Bonnie Tharp or defendant corporation, then log-ic suggests that this loss should be placed upon the innocent party more closely allied with the tortfeasor." *Harlan v. Bishoff,* 649 S.W.2d 230, 234 (Mo.App.1983). This court agrees, and the point is denied.

### C.

■ Without benefit of authority, this next point seems to say the execution of the $50,-000 note in 1986 was only a payment on the pre-existing note from 1985. To quote from the appellant's brief:

> There was no negotiation between plaintiffs and defendant Mufflers concerning the payment of the $100,000.00 note by payment of one-half in cash and the other half by execution of the note sued on herein. The execution of the $50,000.00 note given plaintiffs was nothing more than a partial payment of a debt owed plaintiffs for the sale of inventory, fixtures and name of their corporation. When payments are made for debts owed for purchases made in the past, these payments are not new negotiation or new transactions. The execution of the $50,000.00 note is not a transaction that is material to an alleged fraudulent misrepresentation by omission which is the basis of defendant Muffler's defenses to its inducement to execute the note.

The notion that the 1986 note was a partial payment on the 1985 note is simplistic and incorrect. At the appellant's insistence in 1986, the 1985 note was forgiven on an accelerated $50,000 payment and the execution and guaranty of a new note.

The 1986 note was a new obligation following an accelerated cash payment and Randall's being relieved of the employment contract. There was sufficient consideration for the new note which is the subject of this suit, and as such, the point is denied, *Christeson v. Burba,* 714 S.W.2d 183, 193–94 (Mo. App.1986).

### D.

The Tharps contend the fraud, if any, was not material to induce the maker and guarantor to execute the 1986 note. They say the omission to tell of diversion of funds and

inventory did not cause the new note to be executed or guaranteed.

As part of this point, the Tharps contend there was "only a suspicion that Randall Tharp committed fraud." This contention flies in the face of the evidence showing inventory losses and Tharp's taking money from the cash register prior to the time he submitted his resignation as store manager and his request for accelerated payment.

Point denied.

## II.

■ Reduced to its essence, the point stated it was error to submit instruction number 8 because: A) the instruction was confusing, misleading and assumed Ms. Tharp was responsible for Mr. Tharp's actions; B) it lacked the element of Mufflers' "knowledge" of inventory shortages; C) it did not prove an element of fraud (damage to Mufflers); and D) it misdirected the jury in that Tharp's failure to disclose was directed to Wiser, rather than toward Mufflers.

It should be noted that this point and the previous subpoints is, as presented in the appellants' brief, hard to understand and mixes complaints about the wording of the instruction with questions of sufficiency of the evidence to support paragraphs of the instructions. The plaintiffs depart from the point relied on and discuss various additional sufficiency and instructional problems in the argument portion of their brief. An appellate court is not obliged to determine the questions raised only in the argument portion of the brief. *Massachusetts General Life v. Sellers*, 835 S.W.2d 475, 481 (Mo.App. 1992). Several of the sufficiency arguments were addressed in part I of the opinion, and since justice does not require this court to sieve through the argument portion of the brief, only the asserted instructional deficiencies of Mufflers converse will be addressed. *First Assembly Church of West Plains v. Ticor Title Insurance Co.*, 872 S.W.2d 577, 581–82 (Mo.App.1994). Despite non-compliance with Rule 84.04, the court will attempt to address Tharp's concerns.

Instruction No. 8 is set out below:

Your verdict must be for Defendant Mufflers of Kansas City, Inc. on the claims of Randall Tharp and Bonnie Tharp if you believe:

First, Plaintiff Randall Tharp diverted to his own use funds or assets of Mufflers of Kansas City, and

Second, Plaintiff Randall Tharp failed to disclose to Jack Wiser that Randall Tharp had diverted funds or assets to his own use, and

Third, such omission by Randall Tharp was material and induced Mufflers of Kansas City, Inc. to execute a promissory note to the benefit of Plaintiffs.

What makes any review of this instruction even more difficult is that the Tharps have failed to show they objected to submission of the instruction on any basis other than the failure to reference Mrs. Tharp. Although the complained of instruction was not a model, it did not so misdirect or misinform the jury to result in a new trial.

In sum, the arguments raised in this point as to the wording of the instruction were apparently not raised by the Tharps at the instruction conference. See Rule 70.02(c) and Rule 70.03.

The court does not endorse the instruction here as a model for an affirmative defense of fraud verdict director. It is deficient and incomplete; the issue now is whether the cause should be reversed.

Under the strictures of *Hudson v. Carr*, 668 S.W.2d 68, 71 (Mo. banc 1984), a court should not overturn a verdict where the submission was not in MAI, unless the error was prejudicial in the context of the record. In *Fowler v. Park Corp.*, 673 S.W.2d 749, 756–57 (Mo. banc 1984), the Supreme Court noted:

If counsel is presented with an instruction containing a patent error, and is of the opinion that the instruction might make argument more difficult or have a substantial effect on the jury, it is perfectly possible to request a correct instruction at the instruction conference mandated by Rule 70.02(a). Lawyers take a chance in deliberate silence in the face of error, inasmuch as Rule 70.02(c) does not command reversal simply because there is a deviation

from MAI. There is a risk that the court will find that the error is not prejudicial so as to require reversal.

Retrials are burdensome. There has been in recent years a trend away from reversal for error in instruction, unless there is a substantial indication of prejudice.

Such is the case here. The Tharps make no showing of prejudice causing reversal. Under the facts here, particularly as noted in I. B above, the jury was not misled by these instructions, nor did these instructions warrant a reversal. *Delaporte v. Robey Building Supply, Inc.,* 812 S.W.2d 526, 530–31 (Mo.App.1991). The point is denied.

The judgment is affirmed.

All concur.