**Marie SMITH, Appellant,**

v.

**Bill SMITH, Respondent.**

**No. WD 53468.**

Missouri Court of Appeals,
Western District.

Dec. 8, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 2, 1999.

Application for Transfer Denied
March 23, 1999.

Barton S. Blond, Jill C. Allison, Kansas City, Missouri, for appellant.

James T. Cook, Kansas City, Missouri, for respondent.

Before BRECKENRIDGE, P.J., LOWENSTEIN and SPINDEN, JJ.

BRECKENRIDGE, J.

Marie Smith (Wife) appeals from the trial court's order dissolving her marriage to Bill Smith (Husband). On appeal, Wife contends that the trial court erred in four respects. First, Wife contends that the trial court erred by overruling her objection to the master's first amended report because the master failed to use the date of trial as the valuation date for the marital property and the property's value had changed significantly by the time of trial. Second, Wife alleges that the trial court erred by failing to consider the economic circumstances of the parties at the time the division of property was to become effective because the parties' economic circumstances had changed significantly since the hearings before the master. As her third point on appeal, Wife premises

1. The Smith Company was incorporated in 1986.

error on the trial court's decision to overrule her objection to the master's first amended report because Husband failed to meet his burden of proving that a condominium was his separate property. Finally, Wife contends that the trial court erred by finding that a $77,300 portion of a $101,751.18 debt owed to Husband and Wife by their business was Husband's non-marital property.

The judgment of the trial court is affirmed in part and reversed in part and remanded.

### Factual and Procedural Background

Husband and Wife were married on September 8, 1972. At the time they were married, Husband was employed at Oppenheimer Industries and Wife was employed by Hallmark Cards, Inc. During the parties' spare time, they sold antiques at a booth at a flea market in the Waldo neighborhood of Kansas City, Missouri. In 1973, Husband and Wife started a sole proprietorship, called The Smith Company, to sell gifts, decorative items and antiques.[1] In 1982, Husband and Wife purchased a building in their individual names and rented it to The Smith Company. As the business grew, the parties determined to put all of their efforts into The Smith Company. As a result, Wife quit her job with Hallmark in 1982 to devote her full time efforts and work to The Smith Company. Wife invested all of her profit sharing and pension benefits from Hallmark into The Smith Company. Husband quit his job at Oppenheimer Industries in 1989 to work full-time with The Smith Company.

During the operation of The Smith Company, Husband was primarily responsible for the financial aspects of the business while Wife worked as a designer and decorator and was responsible for developing a fairly exclusive and prestigious client base. By all accounts, The Smith Company became a highly successful and respected antique dealer in the Kansas City area with numerous wealthy clients. Shortly after Husband quit his job at Oppenheimer Industries and began working full-time at The Smith Company, the parties began experiencing marital difficulties. After nearly twenty years of marriage,

the parties separated on March 7, 1991 when Wife filed her petition for dissolution of marriage. No children were born of the marriage.

In January of 1992, Wife moved out of the marital residence, left her employment at The Smith Company and resigned as an officer and director of the parties' business. At this time, Husband took sole control and possession of The Smith Company and barred Wife from entering the premises. Wife used $20,000 in funds she withdrew from The Smith Company's bank account to open her own account and to finance the development of her new business, MLB Designs, Inc., which she formed in February of 1992.

In May of 1992, the trial court appointed a master pursuant to Rule 86.01 to examine the issues of the case and make a report to the trial court recommending disposition of these issues. Among the issues the master was to address included the valuation of the marital and non-marital property as well as the property's marital or non-marital status, an equitable division of the property at issue and the determination of the appropriate attorney fees and court costs. The master conducted evidentiary hearings on July 1, 2, 6, 7 and 30, 1992; August 5 and 12, 1992; and September 11, 1992.

During the hearings before the master, the parties agreed to the values of several items of property. Specifically, Husband and Wife orally agreed that the marital residence had a fair market value of $212,000, that the commercial real estate was worth $330,000 with a $130,000 mortgage and that the Mercedes driven by Wife was worth approximately $15,000. The parties also presented testimony concerning numerous other issues regarding marital property before the master. The master filed a report and recommendations with the trial court on March 29, 1993. After both Husband and Wife filed objections to the master's report, the trial court referred the matter back to the master for reconsideration of the valuation of The Smith Company and MLB Designs, Inc., as well as adjustments in the distribution of assets required by any changes in valuation. The master heard additional evidence during a hearing on January 11, 1994, and filed a first amended report on January 27, 1994.

In his first amended report, the master included findings of fact, conclusions of law and proposed orders. First, the master recommended that a condominium Husband had purchased since the previous hearing be awarded to Husband as his separate property because the master found that there was "uncontroverted evidence that such condominium was purchased with non-marital funds...." In addition, the master noted that Husband and Wife had stipulated to the values of the marital residence and commercial real estate. The master recommended awarding the marital residence to Wife and making her accountable for paying the mortgage encumbering that property. Furthermore, the master recommended setting aside the commercial real estate to Husband, who would assume the mortgage on the property. The master also recommended that Wife receive the Mercedes as her sole and separate property pursuant to the parties' agreement, and that the value of the Mercedes for purposes of the property division was $15,000. Finally, the master found that $77,300 of the $101,751.18 debt owed to the parties by The Smith Company was Husband's separate property, and the remaining balance of the indebtedness was to be split by Husband and Wife equally.

Judge C. William Kramer entered an interlocutory decree dissolving the marriage on October 25, 1994. In addition to ordering the marriage dissolved, the trial court adopted the findings of the master with regard to the valuation and disposition of the residential and commercial real estate. The court noted, however, that since the filing of the master's first amended report, the marital residence had sold for $181,225.72. The court awarded the proceeds from the sale of the marital residence to Wife, and set aside the commercial real estate to Husband. The trial court also ratified the liquidation of The Smith Company due to the company's inability to repay three promissory notes to Bank IV, who had filed a petition for damages and foreclosure against Husband, Wife, and The Smith Company. The court stated that it would undertake further proceedings relating

to the remaining assets not specifically referenced in the order. The only assets specifically referenced in the order were the marital residence and the commercial real estate. The trial court also ordered the preparation of the transcript of the proceedings before the master, as the court believed that the filing of the transcript might be a prerequisite to the court's ability to enter a valid order based upon the master's report.

The ten-volume transcript of the master's hearing was filed in September of 1995. In May of 1996, the parties argued their exceptions to the master's report to Judge J.D. Williamson. In its order overruling the parties' exceptions, the trial court determined that, pursuant to the interlocutory decree of dissolution of marriage, it needed to hold a hearing to effectuate a final disposition of the assets. The court advised the parties that it would not "review issues previously determined or adjudicated by the Court or Master."

In July of 1996, a hearing was held before Judge Williamson. At the hearing, both Husband and Wife testified. The trial court would not receive evidence regarding items addressed in the master's report or the interlocutory order, but it did allow Wife to make an offer of proof. On September 6, 1996, Judge Williamson entered a final order of judgment and decree of dissolution. In its order, the trial court made several findings. In numerous respects, the trial court accepted and incorporated the master's first amended report. The trial court held that Husband and Wife had stipulated to the value of the marital residence and the value of the commercial real estate during the first hearing before the master. Because it found that the parties entered into these stipulations of their own free will, the trial court held that they remained valid and binding in the cause. As a result, the trial court did not hear any additional evidence as to the value of those items of property as of the time of the trial. Furthermore, the trial court accepted the master's recommendations for dividing the marital property, including awarding the condominium to Husband as his separate property.

In other respects, however, the trial court's judgment decree of dissolution deviated from the master's first amended report. The trial court found that since the master's report the value of the parties' IRAs, as well as the value and division of The Smith Company, had changed. At the time of the master's first amended report The Smith Company had not been liquidated, so the master had awarded Wife a share of Husband's IRA to equalize the property division. In the judgment decree of dissolution entered after the liquidation of The Smith Company, the trial court awarded both parties their own IRAs and used the proceeds from the liquidation to equalize the property division to the dollar. The trial court also deviated from the master's first amended report by finding that Husband's $77,300 separate, non-marital share of the parties' $101,751.18 debt from The Smith Company was primarily satisfied through off-set credits of merchandise from The Smith Company to Husband for his personal use and the reduction of his attorney fees, and that such transfers of merchandise were proper. Wife filed a timely appeal.

## Standard of Review

■■■ On appeal from the decision of a trial court which appointed a special master pursuant to Rule 86.01, this court reviews the decision of the trial court, not the findings and recommendations of the master. *M.F.M. v. J.O.M.*, 889 S.W.2d 944, 957 (Mo. App.1995). Since we are reviewing a court-tried case, this court affirms the trial court's decree of dissolution if it is "supported by substantial evidence, is not against the weight of the evidence, and neither erroneously declares nor applies the law." *Hutcherson v. Hutcherson*, 909 S.W.2d 403, 404 (Mo.App.1995). This court accepts the evidence and inferences therefrom most favorable to the trial court's decree and disregards all contrary evidence. *Id.* The trial court has substantial discretion in dividing marital property and this court will not interfere unless the division is so heavily weighted in favor of one party so as to amount to an abuse of discretion. *Id.* at 406.

### Point I—Valuation of Marital Property

■ In her first point, Wife claims that the trial court erred by overruling her objection to the first amended report of the master concerning the valuation date used by the master because the trial court failed to use the date of trial for valuation of the marital property. Wife contends that the trial court erred by adopting the first amended report of the master, which was dated January 27, 1994, when it entered its final decree of dissolution of marriage on September 6, 1996. Wife argues that the court should have heard additional evidence about events which occurred after the master's hearings that changed the economic circumstances of the parties.

Specifically, Wife contends that the trial court erred in valuing the marital residence awarded to her at $232,000 minus a $19,400 mortgage owed to her parents because the property was sold two years prior to trial for significantly less. Wife argues that the value of the marital residence at the time of trial was $161,825.72, which was the sale price of $181,225.72 minus the $19,400 mortgage. Wife also contests the valuation of the commercial real estate at $200,000 because the mortgage on the property had been reduced by marital funds after the master entered his report, and the appraisal upon which the valuation was based did not account for fixtures and later improvements to the property paid for by marital funds. Furthermore, Wife alleges that the value of a 1989 Mercedes automobile awarded to her had decreased to no more than $13,525 at the time of the trial, whereas the master's first amended report valued it at $15,000. Wife contends that since several years had elapsed from the time the parties stipulated to the values to the time the trial court entered its final judgment dissolving the marriage and dividing the property, and the values of the property significantly changed during that time, the trial court should have used the values at the time of the trial.

In response, Husband argues that Wife orally stipulated to the values assigned by the master during the hearing before the master and should not be heard to complain about those values now. During the hearings before the master, Wife agreed that the marital residence had a fair market value of $232,000 (encumbered by a $19,400 debt), that based upon an appraisal conducted in 1991, the commercial real estate was worth $330,000 (encumbered by a $130,000 debt), and that the Mercedes automobile had a fair market value of approximately $15,000.

Before considering the effect, if any, of the oral stipulation concerning the values of the property, this court notes the proper time frame for valuing marital property in a dissolution action. In *Taylor v. Taylor*, 736 S.W.2d 388, 391 (Mo. banc 1987), the Missouri Supreme Court held that marital property should be valued as of the date of trial. However, § 452.330.1(1), RSMo Cum.Supp. 1997,[2] requires that the court consider the economic circumstances of each spouse at the time the division of property is to become effective.

■ Thus, the "[v]aluation of property should be reasonably proximate to the date the division is to be effective." *In re Marriage of Gustin*, 861 S.W.2d 639, 644 (Mo. App.1993). In those cases where the date of valuation is not reasonably proximate to the date of the distribution, the trial court should hold another hearing. *Price v. Price*, 921 S.W.2d 668, 675 (Mo.App.1996). In this case, the date of trial, July 25, 1996, is reasonably proximate to the effective date of the distribution of property, September 6, 1996. Therefore, unless the oral stipulation between the parties controls, the property should have been valued as of July 25, 1996.[3]

■ "A stipulation is an agreement between counsel with respect to business be-

2. All statutory references are to the Revised Statutes of Missouri Cumulative Supplement 1997, unless otherwise indicated.

3. The trial court entered an interlocutory decree of dissolution on October 25, 1994. Under § 452.360.1, RSMo 1994, a decree of dissolution

of marriage is final when entered if not appealed. The effect of the October, 1994 decree was a final judgment dissolving the marriage of the parties, but any division of property was only an interlocutory order. *See Dunafon v. Dunafon*, 800 S.W.2d 483, 484 (Mo.App.1990).

fore the court, and although not a usual pleading, is a proceeding in the cause and so under the supervision of the court." *Ezenwa v. Director of Revenue,* 791 S.W.2d 854, 859 (Mo.App.1990). The purpose of a stipulation is to eliminate the litigation of an issue so as to save delay, trouble and expense. *Id.* Because the rules of contracts govern interpretation of stipulations, "that stipulations may be rendered orally rather than in writing, does not impair their validity." *Id.* Thus, the stipulation in this case is valid. The issue, then, is how to interpret the stipulation in light of the passage of time between the date of its formation and the date of the trial.

■■ Courts should interpret stipulations in light of the result the parties were trying to accomplish. *Pierson v. Allen,* 409 S.W.2d 127, 130 (Mo.1966). *See also Griffin Contracting v. Hawkeye–Security,* 867 S.W.2d 602, 604 (Mo.App.1993). Interpreting a stipulation involves ascertaining the intent of the parties that entered into it. *Vaughn v. Michelin Tire Corp.,* 756 S.W.2d 548, 556 (Mo.App.1988). "That intent is a question of fact to be determined by the court based on the evidence before it." *Id.*

The question here is whether the parties intended by their stipulations to set the values of the property for all subsequent proceedings. In *In re Marriage of Rickard,* 818 S.W.2d 711 (Mo.App.1991), the Southern District of this court faced a similar factual situation. In *Rickard,* the parties' marriage was dissolved in 1985. *Id.* at 712. At the trial leading up to the decree of dissolution, the parties stipulated that their separate inventories and values of property were identical. *Id.* at 714. On appeal from the decree, the appellate court reversed for retrial on several issues concerning the marital property due to the Supreme Court's adoption of the source of funds rule in *Hoffmann v. Hoffmann,* 676 S.W.2d 817 (Mo. banc 1984). *Id.* at 712. At the retrial in 1990, the trial court used the values of the property at the time of retrial rather than the values the parties had stipulated to during the original trial in 1985. *Id.* at 714. Husband appealed, claiming that the parties' stipulations should have remained valid for the retrial. *Id.* He

claimed the trial court should not have valued the property as of the date of the retrial.

In denying Husband's claim, the court of appeals focused on the nature of the stipulation the parties entered into at the first trial. Because the stipulation was filed on the first day of the first trial, the court determined that "the stipulation clearly implies a limitation only as to the dissolution proceeding on August 16, 1984." *Id.* The court also questioned whether it was a valid stipulation since the parties merely agreed that their respective values of the property were the same and could be accepted into evidence without further proof. *Id.* As a result, the *Rickard* court held that the trial court did not err by not adhering to the values stipulated to by the parties and by using the date of retrial for valuation of the property. *Id.* at 716.

This court finds the court's analysis in *Rickard* persuasive, particularly in light of the line of cases discussing the proper time frame for valuing marital property. Here, too, the parties entered into an oral stipulation concerning the values of the property during the first hearing before the master. The trial court then remanded the case to the master to hold a second hearing. Over four years passed between the first hearing during which the parties stipulated to the values of the marital residence and the commercial real estate and the trial court's eventual entry of the final judgment dividing the marital property. At the time of the entry of the final judgment, two years had passed since the parties stipulated to the value of the Mercedes. The record does not support the trial court's finding that the parties intended to bind themselves to the stipulated values, since such a delay was not contemplated when the stipulations concerning the values were made.

Therefore, the trial court erred by using the values of the marital residence, commercial real estate, and Mercedes stipulated to by the parties during the first and second hearings before the master because those values had changed significantly by the time of trial. The trial court should have heard additional evidence in order to assign values to the property as close to the time of the

division as possible. *See Gustin,* 861 S.W.2d at 644. Point I is granted.[4]

### Point II—Economic Circumstances of Parties at Time of Division of Property

As her second point on appeal, Wife claims that the trial court erred by failing to consider the economic circumstances of the parties at the time the division of property was to become effective, pursuant to § 452.330.1(1). As this court has already indicated, the values of the marital residence, the commercial real estate, and the Mercedes had changed significantly by September of 1996 in comparison to what they were when the parties entered into their stipulation as to the values in 1992 and 1994. The trial court's failure to value these items at the time of the trial prevented the court from accurately considering the economic circumstances of the parties at the time the division was to become effective, as the changes in the values of these items certainly affected the economic circumstances of the parties. *Gustin,* 861 S.W.2d at 644.

Wife also argues that the trial court failed to consider the economic circumstances of the parties by refusing to hear evidence of Husband's alleged retention of Wife's one-half share of the parties' joint rental and interest income. Prior to their separation, Husband and Wife had withdrawn rental and interest income in the amount of $4,200 a month from The Smith Company. In the hearings before the master, Wife testified that Husband continued to withdraw this amount each month from the business. According to Wife, she and Husband had agreed that they would divide the income equally; however, Husband had paid her only $500 a month for nine months in 1992, and nothing more. Husband testified before the master that they had agreed that each

would take only $500. Husband testified that he did not withdraw rental and interest income every month because of the company's cash flow problems, and that when he did withdraw the rental and interest income, he paid himself and Wife $500 each, used part of the money to pay the mortgage held by Wife's parents on the commercial real estate, and paid other expenses relating to that property and the residential property. In his first amended report, the master found that the parties had stipulated to divide the rental and interest income equally, and that the parties should continue to do so until an order was entered confirming his report.

As one of her exceptions to the master's first amended report, Wife argued that Husband had never complied with the parties' stipulation to divide the rental and interest income equally, and that the master erred by not considering that fact. The trial court overruled Wife's exception. At trial, the court refused to allow Wife to present evidence concerning the amount of rental and interest income Husband presently owed her, even though Husband testified that he was charging the new business presently renting the commercial real estate double the rent The Smith Company had been paying. Wife contended that the evidence was relevant to the court's making an equitable distribution of the marital estate. In Wife's offer of proof, Wife's attorney stated that Wife would testify that, after deducting the marital expenses paid by Husband out of the rental and interest income and the $4,500 in payments Wife received from Husband in 1992, Wife was owed $85,008.80 for her share of the rental and interest income as of the date of trial.

The trial court's refusal to hear additional evidence regarding the division of the parties' joint rental and interest income was

---

4. Also in Point I, Wife argues that the trial court erred in adopting the master's valuation of three bank accounts set aside to her because the master had charged her multiple times for the same amounts. In making this claim, Wife does not contend that the value of the accounts had changed between the time of the master's valuation and the time of trial and that the trial court thus erred in failing to consider the change in valuation; rather, she contends that the trial

court erred in adopting the master's erroneous valuation. Wife's claim is a departure from her point relied on and as such is a violation of Rule 84.04(e). *Total Economic Athletic v. Pickens,* 898 S.W.2d 98, 103 (Mo.App.1995). Because Wife does not preserve this issue raised only in the argument portion of her brief, we do not address it. *Tharp v. Mufflers of Kansas City, Inc.,* 912 S.W.2d 577, 582 (Mo.App.1995).

error. The trial court found in the final judgment dividing the marital property that "there has been a fair and just division of the income and earnings of the parties from all sources through the date of the dissolution of marriage." The trial court had evidence of the division of the parties' joint rental and interest income up until only January 27, 1994, the date of the master's first amended report. During the master's hearings, the parties disputed the amount of income Husband had withdrawn and the propriety of his expenditures. Because the trial court was free to believe all, part, or none of the testimony of any witness, this court will defer to the trial court's credibility determination on the issue of income earned and divided prior to the entry of the master's first amended report. *In re Marriage of Pfeifer*, 862 S.W.2d 926, 930 (Mo.App.1993). Thus, the trial court's finding that the parties' joint rental and interest income was fairly divided is supported by substantial evidence only as it pertains to income earned prior to the master's first amended report.

The trial court's finding on the division of the joint rental and interest income earned after the filing of the master's report is not supported by substantial evidence because the trial court did not allow the parties to present any evidence on this issue at trial. Moreover, while the trial court appears to limit the time frame for its finding on this issue to the date of the interlocutory decree of dissolution, the court was required to consider the economic circumstances of the parties, including the division of joint income from a marital asset, as of September 6, 1996, the effective date of the division of property. *Gustin*, 861 S.W.2d at 644.[5]

■ Wife next argues that the trial court erred in not allowing her to present evidence regarding the expenses she incurred to maintain the marital residence. Wife claims that between the time Husband moved out of the marital residence in August of 1993 and the time it sold in April of 1994, she spent $6,224.51 to repair and maintain the house.

Because the trial court did not allow her to present evidence on this issue at the hearing, and did not give her a credit for these expenditures nor order Husband to reimburse her for them, Wife argues that the trial court failed to take the expenses into account when it was considering the parties' economic circumstances.

In his report, the master acknowledged that Wife "performed routine maintenance on the residence" after Husband moved out in mid–1993. The trial court overruled Wife's exception to the master's first amended report on this issue. The trial court then adopted the report of the master without hearing further evidence regarding these expenditures, which it had the discretion to do pursuant to Rule 68.01. *Knopke v. Knopke*, 837 S.W.2d 907, 914 (Mo.App.1992). The trial court did not abuse its discretion in this regard. Clearly, the master considered Wife's expenditures, as he specifically referenced them in his report. Unlike on the rental and interest income issue, there was no new evidence on this issue which had not been presented to the master. The expenditures were incurred before the entry of the master's first amended report. Wife's claim that the trial court should have heard the same evidence again regarding the expenses she incurred in maintaining the home is without merit.

Because it failed to value the marital residence, the commercial real estate, and the Mercedes at the time of trial, and failed to hear any evidence of the division of the parties' joint rental and interest income earned between the entry of the master's report and the time of trial, the trial court could not accurately consider the economic circumstances of the parties at the time the division of property was to become effective. Point II is granted in part and denied in part.

**Point III—Whether Husband Met His Burden of Introducing Evidence That the Condominium was His Separate Property**

■ As her third claim of error, Wife contends that the trial court erred by over-

5. Because the dissolution of marriage was final, since not appealed, the parties' personal income earned after the date of the interlocutory decree of dissolution is not marital property. Neverthe-

less, any income earned after that date from the parties' marital assets continues to be marital property because there was no final division of property.

ruling her objection to the master's first amended report because Husband failed to meet his burden of proving that the condominium was his non-marital property. Wife's argument essentially relates to the source of funds Husband used to purchase the condominium.

At the hearing before the master, Husband testified that he bought the condominium in the spring of 1993, after the parties separated but before the legal decree of dissolution, with funds he borrowed from his family in Kentucky. In addition, he testified that he used funds he received when he sold some non-marital stock he owned. He indicated that he owed the money for the mortgage to his mother. No evidence was offered regarding the condominium's fair market value, the amount of the mortgage, or Husband's equity in the property. The master awarded the condominium to Husband as his sole and separate property without placing a value on it.

During the trial court's hearing in July of 1996, Husband's attorney stated that he would produce documents showing the source of funds for the purchase of the condominium; however, he did not do so. Wife's attorney, in Wife's offer of proof regarding the condominium, stated that Wife would testify that she believed the value of the condominium was $122,500 with a debt of $102,500, leaving an equity of $20,000. Additionally, Wife's attorney said that Wife would testify that she believed Husband used marital funds to add fixtures, household furnishings, and interior decorating to the condominium, and that Husband directed The Smith Company to contribute money, inventory or designer time to the condominium. In support of her offer of proof, Wife offered as an exhibit a newspaper article from *The Kansas City Star* about the decor in Husband's condominium. In its judgment decree of dissolution, the trial court valued the condominium at $122,500, with a debt of $100,000 and equity of $22,500, and set it aside to Husband as his sole and separate non-marital property.

There is a statutory presumption that all property acquired by either spouse subsequent to marriage but before a legal decree of separation or dissolution is marital property. Under § 452.330.3,

> [a]ll property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation or dissolution of marriage is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection 2 of this section.

Subsection two of the statute provides that marital property is the following:

> all property acquired by either spouse subsequent to the marriage except:
>
> (1) Property acquired by gift, bequest, devise, or descent;
>
> (2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;
>
> (3) Property acquired by a spouse after a decree of legal separation;
>
> (4) Property excluded by valid written agreement of the parties; and
>
> (5) The increase in value of property acquired prior to the marriage or pursuant to subdivisions (1) to (4) of this subsection, unless marital assets including labor, have contributed to such increases and then only to the extent of such contributions.

█ Therefore, since Husband acquired the condominium after the parties' marriage but before a legal decree of separation or divorce, the condominium is presumed to be marital property. *Barnes v. Barnes*, 903 S.W.2d 211, 213 (Mo.App.1995). Husband, as the party claiming the condominium as his separate property, bears the burden of proving the property is his non-marital property. *Sprock v. Sprock*, 882 S.W.2d 183, 185 (Mo. App.1994). Husband must rebut the presumption by clear and convincing evidence. *Id.*

The trial court's finding that Husband satisfied his burden of rebutting the presumption that the condominium was marital prop-

erty is not supported by the evidence. The only evidence Husband introduced at trial concerning the condominium was the following testimony:

Q. Mr. Smith, state your name and address for the record.

A. Bill G. Smith, 6273 Rosewood, Mission, Kansas, 66205.

Q. Is that a condominium?

A. Yes.

Q. When did you purchase that asset?

A. In the spring of '93.

Q. When did you move from the former marital residence?

A. About July the 1st.

Q. Would you tell the Master just very briefly where you got the funds to purchase that condominium?

A. I borrowed the money from my family in Kentucky.

Q. Did you have to sell any non-marital assets?

A. I am sorry. I did sell some stock I owned in the Simpson County Bank that was non-marital stock, the same as Marie had. So it was a combination of the two things.

Q. To whom do you owe the mortgage for the—who do you owe the money to?

A. To my mother.

Certainly to the extent that Husband purchased the condominium with the proceeds he received from the sale of non-marital stock, the condominium is his separate property under § 452.330.2(3). See Barnes, 903 S.W.2d at 213. Section 452.330.2, however, does not make an exception to the presumption of marital property for property acquired by a spouse before a legal decree of separation or dissolution with funds loaned from his or her family. The loan does not create marital equity, but payment of the loan or improvements with marital funds would. Therefore, under the source of funds rule, the trial court should have split the value of the condominium between the parties according to what percentage of the property's value was purchased with Husband's non-marital assets as opposed to the marital assets. Hoffmann, 676 S.W.2d at

824; R.D. v. J.D., 764 S.W.2d 744, 746 (Mo. App.1989).

Husband argues that the trial court did not err by determining that the entire condominium was his separate, non-marital property because Wife introduced no evidence from which the master could have concluded that marital funds were used to acquire and improve the condominium. Husband relies on the principle that the failure of a party to introduce evidence in support of a position at trial results in waiver of that issue on appeal, citing Williams v. Casualty Reciprocal Exchange, 929 S.W.2d 802, 810 (Mo.App.1996). Therefore, Husband argues that since Wife did not introduce any evidence that the condominium was the parties' marital property, she may not contest this issue on appeal.

Husband's argument ignores the fact that because the presumption of marital property applies to the condominium, he had the burden of introducing clear and convincing evidence that the condominium, and any improvements made to it, were his non-marital property. Barnes, 903 S.W.2d at 213. Due to the operation of the presumption, Wife was not obligated to introduce any evidence to show that the condominium was marital in nature. As Husband failed to satisfy his burden of introducing clear and convincing evidence that the condominium, and any improvements made to the condominium, were his separate, non-marital property, the trial court's finding that the condominium was his separate, non-marital property was not supported by the evidence. Point III is granted.

### Point IV—Whether Portion of Debt Owed to Parties is Husband's Separate Property

■ As her final point on appeal, Wife contends that the trial court erred by finding that a $77,300 portion of the $101,751.18 debt owed to the parties by The Smith Company was Husband's non-marital property because this finding is against the weight of the evidence and constitutes an erroneous application of the law. Wife argues that, although Husband may have traced $77,300 of the debt to his non-marital property, the evidence indicated that he intended a gift of his portion of non-marital assets under the doc-

trine of transmutation because The Smith Company was titled in both parties' joint names. Therefore, Wife argues, The Smith Company's obligation is a marital asset in its entirety.

This court finds that the trial court did not err by awarding Husband $77,300 of the debt as his non-marital property. Husband introduced evidence at trial showing that the $77,300 which he loaned to The Smith Company came from his money market account at Mission Hills Bank. He also introduced evidence that the money market account had been funded from sale proceeds of his non-marital farm in Kentucky and some of his non-marital bank stock.

From this evidence, the trial court did not abuse its discretion by finding that the portion of the debt was Husband's non-marital property. In a judge-tried case such as this one, the trial court is free to believe all, part or none of the testimony of any witness. *Pfeifer*, 862 S.W.2d at 930. Obviously, the trial court chose to believe Husband's testimony concerning the source of the funds he loaned to The Smith Company. Because that source was non-marital, the trial court did not abuse its discretion in ruling that the portion of the note was Husband's non-marital property. *See Hoffmann*, 676 S.W.2d at 824.

Wife argues that "even if [Husband] did meet his burden of proof in establishing his non-marital contribution to a portion of the debt, the source of funds rule ... does not apply when the separate property of a spouse is placed in joint names, unless there is clear and convincing evidence that a gift to the marital estate was not intended." Wife notes that the stock certificate of The Smith Company was issued in the joint names of Husband and Wife. Since the total amount of the $101,751.18 debt was listed as a shareholder advance and Husband and Wife were the only shareholders, Wife contends that Husband's non-marital contribution was placed into joint title and thus was transformed into marital property.

Wife correctly points out that under Missouri law one spouse's placement of his or her separate property into joint names is deemed a gift and transforms the property into marital property unless there is clear and convincing evidence to the contrary. *Hankins v. Hankins*, 823 S.W.2d 161, 162–63 (Mo.App.1992). In this case, not only did Husband introduce sufficient evidence that the contribution was his separate property, but he also introduced sufficient evidence from which the trial court could have determined that he did not intend a gift to the marital estate with his loan to The Smith Company.

Husband testified that in 1989, he became concerned about the amount of money Wife was spending on behalf of The Smith Company. As a result, Husband testified he did not intend to give any more non-marital funds to the marital estate through his investment in The Smith Company. He had outside accountants for The Smith Company prepare a promissory note to assist him in protecting any further investment of his separate funds into the company. Significantly, this note in the amount of $27,851.18, which was introduced into evidence, was issued in Husband's name only. Husband wrote the amounts of the additional non-marital funds he loaned to The Smith Company on the note under the heading "ADDITIONAL AMOUNTS LOANED UNDER SAME TERMS AS ABOVE." This evidence is sufficient to support the trial court's ruling that no gift was intended by Husband. *See Corbett v. Corbett*, 728 S.W.2d 550, 555 (Mo.App.1987). Point IV is denied.

## Conclusion

The trial court's finding that $77,300 of the $101,751.18 debt owed to the parties by The Smith Company was Husband's separate property is affirmed. The trial court's finding that the condominium was Husband's separate property is not supported by the evidence, and is therefore reversed. Because the trial court failed to value the marital residence, the commercial real estate, and the Mercedes at the time of trial and failed to consider the economic circumstances of the parties at the time the division of property was to become effective, the judgment dividing the marital property is reversed. The cause is remanded to the trial court to re-

ceive evidence of the value of the parties' property and to consider the economic circumstances of the parties at the time the division is to become effective. The trial court may consider the evidence previously introduced, with the limitations stated in this opinion, and may consider such further evidence as the parties may present relevant to the division of property.

After Wife filed her appeal with this court, Husband filed motions seeking damages and dismissal of the appeal on the ground that the appeal is frivolous. Because of our disposition of this appeal, these motions are denied. *See Whyzmuzis v. Plaza Shoe Store, Inc.*, 859 S.W.2d 227, 230 n. 5 (Mo.App.1993).

All concur.