Michelle L. WRIGHT, Appellant,

v.

Stephen James WRIGHT, Respondent.

No. WD 56935.

Missouri Court of Appeals, Western District.

Sept. 7, 1999.

Gabriel A. Domjan, Independence, for Appellant.

Les D. Wight, II, Independence, for Respondent.

Before: EDWIN H. SMITH, P.J., and SMART and ELLIS, JJ.

EDWIN H. SMITH, Presiding Judge.

Michelle L. Wright appeals the judgment of the Jackson County Circuit Court dissolving her marriage to the respondent, Stephen James Wright, as to its division of the parties' marital property. In entering its judgment, the court adopted the findings, recommendations, and proposed judgment of the family law commissioner, Sherrill Rosen, pursuant to § 487.030,[1] RSMo Supp.1997.

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

The appellant raises two points on appeal. In Point I, she claims that the trial court erred in dividing the parties' marital property because, in doing so, it erroneously applied § 452.330 in that it failed to value the respondent's stock purchase and savings plan (the savings plan) and pension investment plan (the pension plan) as of the date of trial, resulting in an unjust and inequitable distribution of marital property. In Point II, she claims that the court erred in dividing the parties' marital property because the division was unjust and inequitable in that: (1) it allocated all of the marital debt to her; and (2) it awarded her, as a share of the marital property, the $4,000 proceeds from the sale of the parties' 1991 Honda Civic.

We reverse and remand.

### Facts

The parties were married on June 4, 1992, and separated on November 10, 1995. On November 14, 1995, the appellant filed her petition for dissolution of marriage in the Circuit Court of Jackson County seeking, *inter alia*, to dissolve the marriage and divide the marital property. On January 22, 1996, the respondent filed his answer and cross-petition.

A hearing on the appellant's petition was held on November 5 and December 6, 1996, before Commissioner Rosen. At the hearing, the appellant testified that she began working for AT & T on August 6, 1990, and continued to do so and that through this employment had accumulated savings in a 401(k) plan. With respect to her 401(k) plan, evidence was introduced showing an account balance of $ 3,846.63 as of June 30, 1996. There was no evidence of the plan's value as of the date of trial.

The respondent testified that he began working for the Sherwin–Williams Company in 1984 and that through this employment had accumulated assets in a stock purchase and savings plan and a pension investment plan. The parties stipulated that the respondent's non-marital portion of the savings plan, as of June 1992 when they were married, was 77.289 shares. With respect to the savings plan, three monthly reports, containing information concerning the value of the stocks in the plan as of three different dates, were introduced into evidence by stipulation of the parties. The first report, covering the period of June 1 through 30, 1992, showed that the respondent, as of June 30, 1992, had 77.289 shares of Sherwin–Williams stock valued at $3,616.42. The second report, covering January 1 through 31, 1993, showed that, as of January 31, 1993, he had 161.131 shares valued at $5,253.30. The last report, covering September 1 through 30, 1995, showed that he had, as of September 30, 1995, 348.529 shares valued at $15,340.51. Neither party offered any evidence as to the number of shares in the savings plan and their value as of the date of trial.

As to the respondent's non-marital portion of his pension plan, the parties stipulated to a value of $4,173.15, as of June 1992. As in the case of the savings plan, three monthly reports were also introduced as to the pension plan. The first report, covering June 1 through 30, 1992, reflected a current market value, as of June 30, 1992, of $4,173.15. The second report, covering February 1 through 28, 1993, showed that the plan's value was $ 4,262.50. The third report, covering October 1 through 31, 1995, showed a value, as of October 31, 1995, of $8,273.44. As in the case of the savings plan, no evidence was introduced as to the value of the pension plan as of the date of trial.

The appellant testified that as of the date of the trial, the parties had several outstanding debts. The first was a loan from Providean Bancorp in the amount of $8,400, which was taken out by the appellant in August 1995. The appellant testified that $900 of the loan was spent on paying off the balance due on the parties' First Card Visa credit card; $5,000 was deposited into the parties' joint checking

account; and the rest, $2,500, was used to pay off a prior balance on the parties' Discover Card credit card. The appellant testified that while the respondent did not apply for the loan, he was aware that she had done so and approved. However, the respondent testified that he had no knowledge of the loan until after the appellant filed her petition for dissolution of marriage.

In addition to the debt to Providean Bancorp, the appellant testified that the parties owed $2,660 on their Discover Card credit card, which debt had been incurred prior to the parties' separation in order to pay off a loan from Boatmen's Bank. She further testified that she received a $7,000 loan from her father immediately following her separation from the respondent and that she spent the money on house and car payments, groceries, and fixing a broken water pipe. She asked the trial court to set off the loan from her father to her.

The appellant testified that in May 1996, she sold the parties' 1991 Honda Civic for $5,000. Of that amount, she testified that she spent $1,000 to pay off the loan on the vehicle and, with the remaining $4,000, paid off debts that she had acquired since the parties' separation and to buy the parties' son summer clothes.

On January 8, 1997, Commissioner Rosen issued her findings, recommendations and proposed judgment, *inter alia*, dissolving the parties' marriage and dividing the marital and non-marital property. In her findings, she found that the non-marital portion of the appellant's 401(k) plan was $17/72$ of its present value and that the respondent was entitled to one-half of the remaining balance of the plan. In regard to the respondent's savings plan, she found that it was valued at $15,340.51 and that $3,616.42, the value of the stock held by the respondent at the time of his marriage to the appellant, was his non-marital property, with the balance, $11,724.09, being marital property, with the respondent being awarded $4,875.74 of this amount. As to the respondent's pension plan, Commis-

sioner Rosen found that it was valued at $8,273.44, of which $4,173.15, the plan's value at the time of the parties' marriage, was the respondent's non-marital property, with the remaining balance, $4,100.29, being marital property. Of this amount, the appellant was awarded $2,050.14 as marital property.

With respect to the sale of the parties' Honda Civic, Commissioner Rosen found that the $4,000 sale proceeds remaining after the appellant paid off the loan on the vehicle was marital property, which was credited to the appellant as marital property. The commissioner found that the house in which the parties lived during their marriage was the respondent's non-marital property and that he was solely liable for the loan on the house, although later in the proposed judgment, she referred to this debt as a marital debt. The commissioner also found that the respondent had "no liability" as to the Providean Bancorp loan of $8,400, the $2,600 owed on the Discover Card credit card, and the $7,000 loan from the appellant's father. Although the commissioner found that the respondent had no liability on the debts in question, she later referred to them as "marital debts" and ordered the appellant to be solely responsible for paying them in full.

The parties were notified on January 8, 1997, that the findings, recommendations, and proposed judgment of the commissioner would become the final judgment of the circuit court if the parties did not request a hearing by a judge of the family court within fifteen days. The record does not reflect whether either party filed such a motion. Accordingly, pursuant to § 487.030, RSMo Supp.1997, Commissioner Rosen's findings, recommendations, and proposed judgment presumably became the judgment of the circuit court. *Wright v. Wright*, 967 S.W.2d 263, 264 (Mo.App. 1998).

On February 14, 1997, the appellant filed her notice of appeal to this court. In

*Wright v. Wright,* 967 S.W.2d 263 (Mo. App.1998), this court dismissed the appeal for a lack of jurisdiction. *Id.* at 264. The court, relying on *Slay v. Slay,* 965 S.W.2d 845 (Mo. *banc* 1998), found that because Commissioner Rosen's findings, recommendations, and proposed judgment were not signed by a judicial officer as delineated in article V of the Missouri Constitution, no final appealable judgment had been entered in the case such that the appeal would not lie. *Wright,* 967 S.W.2d at 264. On February 8, 1999, the Honorable W. Stephen Nixon, a circuit judge for the 16th Judicial Circuit, signed a judgment adopting and confirming, without modification, Commissioner Rosen's January 8, 1997, findings, recommendations, and proposed judgment.

This appeal follows.

### Standard of Review

■■■ Our review of provisions in a divorce decree as to the division of marital property is governed by *Murphy v. Carron,* 536 S.W.2d 30 (Mo. *banc* 1976). *Crews v. Crews,* 949 S.W.2d 659, 663 (Mo. App.1997). We will affirm the decision of the trial court, unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Id.* "The burden of demonstrating error is on the party challenging the divorce decree." *Id.*

■■■ An appellate court will only interfere with a trial court's division of property if the division is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion. *Barnes v. Barnes,* 903 S.W.2d 211, 213 (Mo.App. 1995). In this respect, judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Collins v. Collins,* 875 S.W.2d 643, 647 (Mo.App.1994). "If reasonable persons can differ about the propriety of the trial court's action, it cannot be said that the trial court abused its discretion." *Id.*

### I.

In Point I, the appellant claims that the trial court erred in dividing the parties' marital property because, in doing so, it erroneously applied § 452.330 in that it failed to value the respondent's savings and pension plans as of the date of trial, resulting in an unjust and inequitable distribution of marital property. We agree.

■■■ Although a trial court, in dividing marital property in a dissolution proceeding, need not assign specific values to the property, " 'evidence from which the value of the marital property can be determined must appear.' " *Spauldin v. Spauldin,* 945 S.W.2d 665, 669 (Mo.App.1997) (*quoting Frame v. Frame,* 696 S.W.2d 332, 336 (Mo.App.1985)); *see also Lewis v. Lewis,* 978 S.W.2d 64, 66 (Mo.App.1998) (holding that the trial court, in dividing marital property, is prohibited from relying on valuations not supported by the evidence at trial). With respect to the valuing of marital property, both parties in the dissolution proceeding bear an equal burden to present evidence. *Lewis,* 978 S.W.2d at 67 (*citing Julian v. Julian,* 868 S.W.2d 182, 186–87 (Mo.App.1994)). Generally, the " 'appropriate date for valuing marital property in a dissolution proceeding is the date of trial.' " *Id.* at 66 (*quoting Romkema v. Romkema,* 918 S.W.2d 294, 298 (Mo. App.1996)); *see also Witt v. Witt,* 930 S.W.2d 500, 505 (Mo.App.1996). However, where the division of property is not reasonably proximate to the time of trial, the valuation date should be the date of the division of the property, *Smith v. Smith,* 985 S.W.2d 836, 841 (Mo.App.1998), in that " '[i]t cannot be said that distributions based upon stale valuations are based on value, for value is by no means a constant.' " *Morgan v. Ackerman,* 964 S.W.2d 865, 869 (Mo.App.1998) (*quoting In re Marriage of Gustin,* 861 S.W.2d 639,

643 (Mo.App.1993)). "Market conditions and changing economic circumstances can render assets that had been valuable months or years earlier virtually worthless in the present, and vice versa." *Id.* To distribute marital property without regard to such fluctuations would be illogical. *Id.* Hence, in those cases where the date of trial is not reasonably proximate to the date of the actual distribution of the marital property, the court should hold another hearing to determine the value of the marital property at the time of its division. *Id.*

In this case, the hearing on the appellant's petition was held on November 5 and December 6, 1996. The commissioner issued her proposed judgment dissolving the parties' marriage and dividing the marital property on January 8, 1997, which was later adopted by the circuit court as its judgment. Thus, because the date on which the marital property was valued and divided was reasonably proximate to trial, another hearing to determine the value of the marital property at the time of its division was unnecessary. *Smith*, 985 S.W.2d at 841. As such, the appropriate date for valuing the marital property in this case was the date of trial. *Id.*

As to the values of the respondent's savings and pension plans, there were three monthly reports offered and admitted into evidence. The most recent report as to the savings plan reflected, as of September 30, 1995, a value of $15,-340.51. The most recent report as to the pension plan showed, as of October 31, 1995, a value of $8,273.44. However, there was no evidence offered by either party as to the value of the plans as of the trial date. In the judgment, the savings plan was valued at $15,340.51, which was its value as of September 30, 1995, and the pension plan at $8,273.44, which was its value as of October 31, 1995. Because the savings plan was found to have the same value at trial as it did on September 30, 1995, and that the pension plan had the same value at trial as it did on October 31,

1995, there would have had to have been evidence from which the trial court could have reasonably inferred that either: (1) there was no activity in the plans between the value dates in question and trial; or (2) there was activity, but such activity resulted from one of the spouses secreting or squandering marital assets for which the court held him or her liable to the other spouse in its division of the plans. *Lewis*, 978 S.W.2d at 67. Our review of the record indicates that it is devoid of any such evidence. Thus, in finding that the values of the plans were the same at the time of trial as they were at the last time they were valued in the reports admitted at trial, the trial court misapplied the law as found in § 452.330. Hence, we must reverse and remand for the purpose of allowing the trial court to determine the values of the plans at the time of trial, including receiving additional evidence, if necessary, and to render a just and equitable division of the parties' marital property accordingly. *Id.; see also Gustin,* 861 S.W.2d at 643.

The respondent contends that because the appellant did not present any evidence at trial as to the present values of his plans, this court cannot find that the trial court erred in dividing the marital property as it did, relying on *Julian v. Julian,* 868 S.W.2d 182 (Mo.App.1994). In *Julian,* decided by the Eastern District of this court, the trial court awarded the wife her two pension plans. *Id.* at 183. The husband appealed, claiming that a portion of each plan was marital property and should have been equally divided between the parties. *Id.* at 186. No evidence was offered at trial as to the value of either pension plan as of that time. The court recognized that both the wife and the husband bore an equal burden to present evidence as to the value of the pension plans and that without such evidence, the appellate court could not find that the trial court made an unjust division of marital property in awarding those assets to the wife. *Id.* at 186–87. Essentially, what the court

held was that a party waives any objection to the division of marital property as being unjust and inequitable for failure to value it at the time of trial, unless he or she presented evidence on this issue.

 Despite the respondent's contention, we reaffirm our holding in *Spauldin* that evidence permitting an accurate valuation of marital property as of the date of trial or property distribution is necessary before a just and equitable division of the marital property, as required by § 452.330, can be achieved, *Spauldin,* 945 S.W.2d at 669, and in the absence of such evidence, there can be no meaningful appellate review to determine if, in fact, the division of property was fair and equitable. *Bidstrup v. Bidstrup,* 750 S.W.2d 712, 713–14 (Mo. App.1988). Hence, to the extent our holding here is contrary to the Eastern District's holding in *Julian, supra,* we choose not to follow it.

## II.

In Point II, the appellant claims, on several grounds, that the trial court erred in dividing the parties' marital property because the division was unjust and inequitable. Specifically, she claims that the trial court's division of the marital property was unjust and inequitable in that in doing so: (1) it allocated all of the marital debt to her; and (2) it awarded her, as marital property, the $4,000 proceeds from the sale of the parties' 1991 Honda Civic, which had been sold to a third party at the time of trial, without finding that she secreted or squandered the proceeds.

 Section 452.330, which governs the division of property in a dissolution proceeding, mandates a two-step process to be followed by the trial court: (1) the court must first set aside to each spouse his or her non-marital property; and (2) then divide the marital property. *Eck v. Eck,* 904 S.W.2d 60, 61 (Mo.App.1995) (*citing Steele v. Steele,* 844 S.W.2d 104, 104 (Mo.App.1992)). The trial court is vested with great flexibility and discretion in its division of property pursuant to § 452.330. *Klockow v. Klockow,* 979 S.W.2d 482, 487 (Mo.App.1998). The division of marital property need not be equal, but must be fair and equitable given the circumstances of the case. *Id.* When dividing marital property, the trial court is required to consider all relevant factors, including: (1) the economic circumstances of each spouse at the time of the property division; (2) the contribution of each spouse to the acquisition of the property; (3) the value of each spouse's non-marital property; (4) the conduct of the parties during the marriage; and (5) the custodial arrangements for the minor children. § 452.330.1.

### A. Allocation of Marital Debt

In support of her claim that the trial court's division of marital property was inequitable and unjust, the appellant first contends that the court erred in allocating her all of the marital debt. Implicit in this claim is her assertion that the allocation of marital debt directly affects the equitable division of marital property. This assertion is recognized in the law. *Hicks v. Hicks,* 969 S.W.2d 840, 846 (Mo.App.1998). In making her claim, of course, the appellant assumes that the debts in question were, in fact, marital debts and that the record did not support their 100% allocation to her. Hence, in deciding her claim, we must not only determine whether the record would support the allocation of marital debt made by the trial court, but initially, whether the debts allocated were, in fact, marital debts.

Under the version of § 452.330 in effect and controlling in this case, marital debts incurred during the marriage were not marital property, and the trial court was under no obligation to divide them. *McNair v. McNair,* 987 S.W.2d 4, 7 (Mo. App.1998). However, while a trial court had no express duty under § 452.330 to allocate marital debts, because, logically, their allocation directly impacts the statutorily required division of marital property, our appellate courts have recognized

that, in order to effectuate a fair and equitable division of marital property, trial courts, as a general rule, should do so. *Id.; Hicks,* 969 S.W.2d at 846. Appreciating this fact, the Missouri General Assembly recently amended § 452.330 to expressly require trial courts to divide not only marital property, but marital debt. § 452.330, RSMo Supp.1998.

■■■■■ In dividing marital debt, the trial court is vested with broad discretion in determining how and in what manner the debts should be divided, and this court will not disturb its division absent a clear showing of an abuse of discretion. *Estep v. Estep,* 978 S.W.2d 817, 819–20 (Mo.App. 1998). An abuse of discretion occurs when a trial court's ruling is "clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration. There is no abuse of discretion if reasonable persons could differ about the propriety of the trial court's decision." *Stevens v. Craft,* 956 S.W.2d 351, 355 (Mo.App.1997) (citation omitted). The trial court possesses the authority to distribute marital debts in the sense that one spouse may be assigned the primary duty to pay off the debt and hold the other spouse harmless on the same. *Hileman v. Hileman,* 909 S.W.2d 675, 681 (Mo.App.1995). The fact that one spouse did not control or actively participate in the decision to incur a debt does not preclude its allocation to that spouse where it is determined to be a marital debt. *Locke v. Locke,* 901 S.W.2d 912, 916 (Mo.App. 1995); *Welch v. Welch,* 795 S.W.2d 640, 645 (Mo.App.1990).

■■■■ Section 452.330 does not provide any guidance as to what constitutes marital debt. It does provide, however, that marital property is all property acquired by either party subsequent to the marriage except:

(1) Property acquired by gift, bequest, devise, or descent;

(2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

(3) Property acquired by a spouse after a decree of legal separation;

(4) Property excluded by valid written agreement of the parties; and

(5) The increase in value of property acquired prior to the marriage or pursuant to subdivisions (1) to (4) of this subsection, unless marital assets including labor, have contributed to such increases and then only to the extent of such contributions.

§ 452.330.2. In light of this definition of marital property, it follows that " 'marital debt' is 'ordinarily debt incurred subsequent to the marriage.' " *Hicks,* 969 S.W.2d at 846 (*quoting Welch,* 795 S.W.2d at 643); *see also Estep,* 978 S.W.2d at 819.

■■■■ Although not requested by the parties pursuant to Rule 73.01(a)(3), the trial court here made specific findings of fact and conclusions of law by adopting those of Commissioner Rosen. In its findings as to the Providean Bancorp loan, the Discover Card debt, and the loan from the appellant's father, the trial court found that the respondent "ha[d] no liability." Such a finding is consistent with a finding that the debts were non-marital. This is so in that only one spouse can be individually liable on a non-marital debt, and the trial court cannot allocate such a debt to the other spouse. *Eck,* 904 S.W.2d at 61 (*citing Miller v. Miller,* 806 S.W.2d 516, 517 (Mo.App.1991)). However, as to a marital debt, both parties are legally liable thereon such that the trial court can require payment thereof, in full or in part, by either spouse as part and parcel of its required division of marital property. *Jones v. Jones,* 958 S.W.2d 607, 615 (Mo. App.1998). Unlike marital debts, non-marital debts have no effect on the value of the marital estate to be divided under § 452.330, and thus, are not to be considered in deciding whether the division of marital property is fair and equitable. As

such, if the debts in question here were the appellant's non-marital debts for which she was solely liable, there would be no merit to her contention that the trial court abused its direction in ordering her to pay them in full.

■ Despite having found that the respondent had no liability as to the three debts in question and, thus, implicitly finding that they were non-marital debts, the trial court subsequently referred to these debts in its judgment as "marital debts" and ordered that the appellant to be responsible for paying them in full. Thus, they could not be considered by the trial court in its division of the marital property pursuant to § 452.330. Assuming, however, they were marital debts, which the trial court undertook to divide, it would be required to do so in a fair and reasonable fashion. In this respect, because § 452.330.1 requires the trial court to consider all relevant factors, including those listed in the subsection, when dividing marital property, logically, it follows that the court should consider all relevant factors, including those found in § 452.330.1, when dividing marital debt. *Welch,* 795 S.W.2d at 642–43.

■ In cases where it is unclear from the record whether property should be and was treated as separate or marital property for purposes of property division and this designation turns on witness credibility, which is an issue for the trial court, the only recourse for the appellate court is to reverse and remand for the appropriate findings by the trial court. *Eck,* 904 S.W.2d at 61; *Steele,* 844 S.W.2d at 104–05. Given the inseparable connection between the allocation of marital debt and the fair and equitable division of marital property discussed, *supra,* this same general principle would apply to the trial court's failure to designate debt as either marital or non-marital.

In this case, the record is unclear as to whether the trial court was actually treating the Providean Bancorp loan, the Dis-

cover Card debt, and the personal loan from the appellant's father as marital or non-marital debts in dividing the marital property. And, depending on whose testimony was believed by the trial court, the debts might be found by it to be either, which would affect our determination of whether the court's property division was fair and equitable, as discussed, *supra.* Hence, we are required to reverse and remand for the trial court, based on the evidence presented, to designate the parties' debts as either marital or non-marital in making its division of marital property.

Although not raised by the appellant in her brief, we feel compelled to address the fact that there was a further inconsistency in the findings of the trial court and its judgment dividing property and debt. Although the court found that the house in which the parties lived during the course of their marriage was the non-marital property of the respondent and awarded it as such, it found that the debt owed thereon, $47,000 at the time of trial, was "marital debt" which the respondent was ordered to pay. The record reflects that the house was owned by the respondent at the time of his marriage to the appellant, presumptively making it his non-marital property. *Estep,* 978 S.W.2d at 819. As to this presumption, the trial court specifically found that the appellant failed to demonstrate any contribution establishing a marital interest in the house. The appellant does not challenge this finding or the award of the house as non-marital property. Hence, in order to be consistent, the trial court's judgment should be corrected on remand to reflect the fact that the debt on the house was "non-marital" debt of the respondent, not marital. *See Welch,* 795 S.W.2d at 645–46 (holding that the characterization of property and debt thereon as marital or non-marital must be consistent).

### B. Sale Proceeds of Motor Vehicle

■ The appellant next claims that the trial court erred in its division of the parties' marital property by awarding her the

$4,000 proceeds from the sale of the parties' 1991 Honda Civic, which had been sold to a third party as of the date of trial. This award was made without the trial court finding that she secreted or squandered the asset. The appellant claims that the court should have excluded the $4,000 from its division of marital property because the vehicle did not exist at the time of the hearing, the date for valuing marital property, and because she used the $4,000 for living expenses.

As discussed, *supra*, generally the appropriate date for valuing marital property in a dissolution proceeding is the date of trial. *Witt*, 930 S.W.2d at 505. Thus, the appellant is correct in her assertion that a trial court cannot include the value of a marital asset that no longer exists in its division of marital property where one spouse has used that asset for his or her living expenses following separation and prior to the dissolution hearing. *Lawrence v. Lawrence*, 938 S.W.2d 333, 338 (Mo.App. 1997); *Tate v. Tate*, 920 S.W.2d 98, 103 (Mo.App.1996); *Hoffmann v. Hoffmann*, 676 S.W.2d 817, 828 (Mo. *banc* 1984). However, where a party has intentionally secreted or squandered a marital asset in anticipation of the marriage being dissolved, the court may hold that party liable for the amount of the asset by awarding it to him or her in its division of the marital property. *Stratman v. Stratman*, 948 S.W.2d 230, 239 (Mo.App.1997); *Lawrence*, 938 S.W.2d at 338; *Witt*, 930 S.W.2d at 505; *Romkema*, 918 S.W.2d at 298. This effectively reduces that party's property award by the squandered amount. *Schneider v. Schneider*, 824 S.W.2d 942, 947 (Mo.App.1992).

Here, the appellant testified that she spent the $4,000 sale proceeds to pay off debt that she had incurred since her separation from the respondent and to buy clothes for the parties' son. Other than her testimony, she offered no evidence to show that the proceeds were used for her living expenses. The court found that the $4,000 was "unaccounted for," obviously choosing to disbelieve the appellant's testimony that she used the money for her living expenses, but used it for other purposes, which it was free to do. *Id.; Dove v. Dove*, 773 S.W.2d 871, 874 (Mo.App. 1989). As such, we cannot convict the trial court of error in awarding the appellant the $4,000 car sale proceeds as marital property.

Point denied.

### Conclusion

The judgment of the circuit court dissolving the marriage of the parties as to the division of property and debt is reversed and the cause remanded for further proceedings consistent with this opinion.

All concur.