Leah LUCKEROTH, Respondent,

v.

Lee T. WENG, Appellant.

No. WD 58745.

Missouri Court of Appeals,
Western District.

Aug. 28, 2001.

Karen A. Plax, Kansas City, for appellant.

Connie J. Boysen, Overland Park, James T. Cook, Kansas City, for respondent.

Before NEWTON, Presiding Judge, ELLIS, Judge and HARDWICK, Judge.

ELLIS, Judge.

Lee Weng ("Husband") and Leah Luckeroth ("Wife") were married on July 17, 1993. Two children were born of the marriage, Sabrina Weng, born June 10, 1994, and Tina Weng, born June 17, 1997. Husband and Wife separated in May 1998, and Wife filed for dissolution on May 12, 1998. The Circuit Court of Jackson County conducted an eight-day hearing in August 1999, with four days devoted to issues of child custody, child support, and visitation and four days devoted to issues of property division, attorney's fees, as well as maintenance. The trial court dissolved the couple's marriage in February 2000. Husband appeals the trial court's determinations as to child support and property distribution.

■ In a dissolution action, provisions in a divorce decree will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Bauer v. Bauer*, 38 S.W.3d 449, 455 (Mo.App. W.D.2001). The party challenging the divorce decree has the burden of demonstrating error. *Childers v. Childers*, 26 S.W.3d 851, 853 (Mo.App. W.D. 2000).

■ Husband presents five points on appeal. As a preliminary matter, we must

address Husband's points relied on, several of which contain lengthy factual recitations, and one of which incorporates an exhaustive list of facts and consumes more than one and one-fourth pages of single spaced type. Rule 84.04(d)(1) provides that "each point shall: (A) identify the trial court ruling or action that the appellant challenges; (B) state concisely the legal reasons for the appellant's claim of reversible error; and (C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error." "Any reference to the record shall be limited to the ultimate facts necessary to inform the appellate court and the other parties of the issues. Detailed evidentiary facts shall not be included." Rule 84.04(d)(4). "Strictly speaking, non-compliance with the dictates of Rule 84.04 preserves nothing for appellate review." *Stangeland v. Stangeland*, 33 S.W.3d 696, 703 (Mo.App. W.D.2000). Nevertheless, because the issues presented relate to the welfare of children and we can discern Husband's claims of error from his lengthy points relied on and the argument section of his brief, we will review his points *ex gratia. See Id.* The fact that we do so, however, should not be viewed as approving of non-compliance with Rule 84.04, but rather only as an expression of concern for the welfare of children.

In his first three points, Husband contends the trial court erred in its calculation of child support by: (1) failing to calculate the presumed correct child support amount (PCCSA) and to include its child support calculations in its judgment, (2) failing to explain why it rebutted the PCCSA, and erring in determining that the reasonable and necessary expenses of the children totaled $4,295.00 per month, and (3) failing to offset the child support amount with a credit for the expenses Husband incurs when the children are with him.

■ "An award of child support is within the sound discretion of the trial court." *Thill v. Thill*, 26 S.W.3d 199, 207 (Mo.App. W.D.2000). "We will not substitute our judgment for that of the trial court absent a manifest abuse of discretion and will not disturb an award of child support unless the evidence is 'palpably insufficient' to support it.'" *Id.* (quoting *Holmes v. Holmes*, 878 S.W.2d 906, 909 (Mo.App. 1994)).

In the dissolution decree, the parties were granted joint legal and physical custody of the children, and Husband was ordered to pay $3,300 per month in child support. Both parties submitted Form 14s to the court, however, the court rejected all Form 14s submitted by the parties and stated that it calculated its own Form 14, even though none was included in the judgment, with a PCCSA of $1,376 per month. The court then rebutted the PCCSA as being unjust and inappropriate based on a finding that the reasonable and necessary expenses of the children equaled $4,295 per month. The court then ordered Husband to pay $3,300 per month of those expenses in the form of child support.

■ Husband's first point argues that the trial court was required to include its child support calculations in its judgment. When awarding child support, a trial court must first determine the presumed correct child support amount (PCCSA) calculated pursuant to Civil Procedure Form No. 14. *Woolridge v. Woolridge*, 915 S.W.2d 372, 379 (Mo.App. W.D.1996). The trial court can calculate the PCCSA by either "accepting one of the parties' proposed Form 14 or by rejecting either party's Form 14 if not accurately or correctly completed, and preparing one of its own." *Childers*, 26 S.W.3d at 854. The trial court in the case at bar rejected the Form 14s submitted by the parties, and in its judgment, the court indicated that it calculated its own Form

14. However, the court's Form 14 calculations are not part of the record before this court.

The judgment indicates that the trial court found Wife's annual income to be $87,396 and Husband's annual income to be $292,000. The court then determined, by referring to the Schedule of Basic Child Support Obligations chart, that the combined income of the parties exceeded the child support chart guidelines. Although not indicated in its judgment, the level of monthly income earned by the parties created a Basic Child Support Amount of $2,055. From that point, we do not know how the trial court arrived at a PCCSA of $1,376 per month.

■ We have found that "it is implicit in the rule that the trial court articulate for the record how it calculated its Form 14 amount." *Woolridge,* 915 S.W.2d at 381. This is because:

> if the trial court was allowed to merely state the amount of its Form 14 calculation without making a record as to how it was calculated, appellate review as to whether the guidelines were followed by doing a correct Form 14 calculation would be next to impossible, effectively destroying the mandate of § 452.340.7 and Rule 88.01 that the guidelines be followed in every case.

*Id.* "The trial court can do its own Form 14 calculation by either completing a Form 14 worksheet and making it a part of the record, ... or by articulating on the record how it calculated its Form 14 amount." *Id.* at 382. But "[t]he lack of specific findings as to how the trial court calculated its Form 14 amount will not automatically trigger a reversal on appeal on that issue, provided the record clearly indicates how the trial court arrived at its Form 14 amount." *Id.*

■ In the case at bar, there is no clear indication on the record of how the trial court arrived at its Form 14 amount.

There was evidence presented at trial that both parents would incur work-related child care costs, that the children were enrolled in private school/child care through Raintree Montessori School, and that Husband wanted the children to attend Barstow private school. In fact, the trial court ordered that the children attend Raintree School until the end of the 1999–2000 school year. Without the Form 14 calculated by the trial court, we do not know if the court considered the work-related child care costs or included the private school expenses as extraordinary child rearing costs. There was testimony that Sabrina, the oldest child, was involved in piano, swimming, and gymnastics lessons as well as a member of a soccer team. We do not know if the trial court included the cost of these lessons in extraordinary expenses or if the court adjusted Husband's child support obligation for overnight visitation or custody without having the Form 14 before us.

The trial court did not accept either parent's proposed Form 14. It did not place its own Form 14 worksheet in the record. And it did not clearly indicate on the record how it arrived at its Form 14 amount. Accordingly, it is impossible for this court to review the trial court's decision to determine whether the guidelines were followed and a correct Form 14 calculation was made. Thus, we must reverse and remand the trial court's decision on this issue. *See Homfeld v. Homfeld,* 954 S.W.2d 617, 622 (Mo.App. W.D.1997) (citing *Woolridge,* 915 S.W.2d at 382–83). On remand, the trial court should follow the teachings set forth in *Woolridge* and find for the record the presumed correct child support amount. *Neal v. Neal,* 941 S.W.2d 501, 504 (Mo. banc 1997). Then, if the trial court determines that the presumed amount is unjust and inappropriate, it should rebut the presumed amount in accordance with *Woolridge. Id.*

In his fourth point, Husband contends the trial court erred in not conducting a hearing to establish the values of the stocks and mutual funds at the time the assets were distributed, which was approximately six months after the dissolution hearing. He argues that, between the time the trial court entered its judgment and the time that judgment became final, the value of the assets changed so substantially that the trial court should have conducted a hearing to ascertain the value of the parties' assets before the judgment became final.

The trial court heard evidence on the value of marital and non-marital property of the parties in August 1999. The court then took additional evidence as to the value of the parties' assets on January 6, 2000. On February 2, 2000, Husband filed a "Motion for Opportunity to Present Evidence of Changed Values of Marital and Non Marital Assets." Husband withdrew that motion, when on February 10, 2000, counsel for both parties signed a "Joint Stipulation and Agreement." The stipulation provided that any changes in the value of the parties' assets since the January 6, 2000 update were immaterial and that no additional hearings or presentation of evidence regarding changed values was needed, provided the Commissioner signed the Findings and Order on February 10 or February 11, 2000.

The Commissioner issued her findings on February 11, 2000, and the trial court adopted the findings of the Commissioner on February 24, 2000. Thereafter, on March 13, 2000, Wife filed a "Motion for Clarification, Reconsideration and to Amend Judgment and Decree of Dissolution of Marriage, or in the Alternative for New Trial," which the trial court never ruled on.

Husband does not complain that the trial court used the January 6, 2000 values when it entered the judgment on February 24, 2000. He argues that, because Wife filed the motion for reconsideration or new trial on March 13, 2000, the judgment of the trial court did not become final until ninety days after that motion was filed. His contention, then, is that the trial court should have conducted a hearing on the value of the assets just prior to the judgment becoming final. The assertion is devoid of merit.

As a general rule, the appropriate date to value property in a dissolution proceeding is the date of trial. *Wright v. Wright,* 1 S.W.3d 52, 57 (Mo.App. W.D. 1999) (quoting *Lewis v. Lewis,* 978 S.W.2d 64, 66 (Mo.App.1998)). However, "[v]aluation of property should be reasonably proximate to the date the division is to be effective." *In re Marriage of Gustin,* 861 S.W.2d 639, 644 (Mo.App. W.D.1993). *See also, Wright,* 1 S.W.3d at 57 ("[W]here the division of property is not reasonably proximate to the time of trial, the valuation date should be the date of the division of the property."). "If the effective date of the distribution is not reasonably proximate to the date of valuation, the court should hold another hearing to establish a valuation as close to the effective date of the division as possible." *In re Marriage of Gustin,* 861 S.W.2d at 644; *See also Wright,* 1 S.W.3d at 58.

The effective date of the division of property in a dissolution proceeding is the date the trial court enters its order or judgment dividing the property. *In re Marriage of Gustin,* 861 S.W.2d at 643; *Smith v. Smith,* 985 S.W.2d 836, 841 (Mo. App. W.D.1998); *In re Marriage of Burns,* 903 S.W.2d 648, 652 (Mo.App. E.D.1995) ("The division of property becomes effective as of the date of dissolution.").

Here, Husband does not dispute that the valuation evidence of January 6, 2000, was reasonably proximate to the

Commissioner's findings of fact dated February 11, 2000, or to the trial court's decree dated February 24, 2000. The division of property occurred on the date of judgment, February 24, 2000, not when the motion for reconsideration or new trial was overruled. Point denied.

 In his final point on appeal, Husband contends the trial court erred in classifying $196,000 from a Fidelity account as marital property. He argues the trial court's determination was against the weight of the evidence and an abuse of discretion. He contends that he began contributing funds to the support of his parents long before he married Wife, partly in an attempt to repay his parents for supporting him when he first came to the United States in 1980. He explains that in order for his parents to obtain United States citizenship, they were required to have their own assets in the United States, to ensure that they would not apply for Medicare or otherwise be dependent upon assistance from the government if they were to become citizens of the United States. Furthermore, he asserts that the Fidelity account was established in an effort to build his parents' assets in the United States to help them meet the citizenship requirements and to allow them to retire in the United States.

The trial court found the following facts relating to the Fidelity account. Husband transferred substantial marital property to his brother and mother during the marriage. Husband set up Fidelity account number 133–229485 and had deposited approximately $193,480 into that account as of June 30, 1999. Husband commenced transferring marital funds to the Fidelity account at or near the time of the parties' first separation in 1995,[1] and a large deposit was made by Husband into that same account at the time of the parties' last separation in 1998. Wife did not know about the Fidelity account until it was disclosed during discovery. Husband's brother and mother never used any of the funds deposited into the Fidelity account, and the funds remained in that account until it was liquidated subsequent to trial at a value of approximately $196,000. The trial court determined that "due to the timing of the establishment of said account and the deposits made in said account, that [Husband] dissipated and attempted to conceal said marital funds, to deprive [Wife] of same."

 "The trial court has broad discretion in identifying marital property." *McGowan v. McGowan*, 43 S.W.3d 857, 866 (Mo.App. E.D.2001). "Further, where a party has intentionally secreted or squandered an asset in anticipation of divorce, the trial court may hold that party liable for the value of the asset by awarding it to the party." *Id.* Moreover, great deference is given to the trial court to determine the credibility of witnesses. *In re G.P.C.*, 28 S.W.3d 357, 366 (Mo.App. E.D.2000). "A trial court determines what portions of a witness's testimony to believe or disbelieve." *Id.* We will extend this deference to the trial court's decision even if the evidence could have supported another conclusion. *Id.* Because the trial court is the judge of witness credibility, it was free to disbelieve the testimony of Husband that he gifted the funds in the Fidelity account to his mother and brother without any intent to deprive Wife of those funds in the divorce.

Viewing the evidence in the light most favorable to the trial court's judgment, and disregarding all contrary evidence and inferences, as we must, *Judy v. Judy*, 998 S.W.2d 45, 50 (Mo.App. W.D.1999), and

1. The parties separated the first time and Wife filed a Petition for Dissolution on July 24, 1995. The Fidelity account was opened on August 4, 1995, with a deposit of $10,000.

giving the deference required to the trial court's credibility determinations, we cannot say that the trial court abused its discretion or that the decision is against the weight of the evidence. Point denied.

The judgment of the trial court establishing child support is reversed and remanded for the trial court to consider *Woolridge* and abide by its instructions in making a record of its calculation of the presumed child support amount under Form 14. Because of the length of time since evidence was heard by the trial court on the issue of child support, the trail court may wish to conduct a further evidentiary hearing so it may consider any changes in circumstances that have occurred since the last hearing. *See Cuda v. Cuda,* 906 S.W.2d 757, 761 (Mo.App. W.D. 1995). If the trial court determines that the presumed amount is inappropriate, it should follow *Woolridge* in making a proper record with respect to why the amount is rebutted. The judgment of the trial court is affirmed in all other respects.

All concur.